CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos R. Holguín (Cal. Bar No. 90754)
256 S. Occidental Blvd.
Los Angeles, CA 90057
Telephone: (213) 388-8693 (Schey ext. 304; Holguín ext. 309)
Facsimile: (213) 386-9484
pschey@centerforhumanrights.org
crholguin@centerforhumanrights.org
*Counsel for Plaintiffs*
*Additional counsel for plaintiffs listed next page*


UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA, ʳSouthern ʼDivision


| | |
|---|---|
| MARTIN R. ARANAS, IRMA RODRIGUEZ, AND JANE DELEON, <br><br> Plaintiffs, <br><br> -vs- <br><br> JANET NAPOLITANO, Secretary of the Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, Director, United States Citizenship and Immigration Services; and UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES, <br><br> Defendants. | Case No: <br> SACV12 1137 JVS(MLᵧx) <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF <br><br> (CLASS ACTION) |

*Additional counsel for plaintiff Martin R. Aranas:*

PUBLIC LAW CENTER
Julie Greenwald (Cal. Bar No. 233714)
Monica Ashiku (Cal. Bar No. 263112)
601 Civic Center Drive West
Santa Ana, CA 92701
Telephone: (714) 541-1010 (Greenwald Ext. 263, Ashiku Ext. 249)
Facsimile: (714) 541-5157
jgreenwald@publiclawcenter.org
mashiku@publiclawcenter.org

ASIAN LAW ALLIANCE
Beatrice Ann M. Pangilinan (Cal. Bar No. 271064)
184 Jackson Street, San Jose, CA 95112
Telephone: (408) 287-9710
Facsimile: (408) 287-0864
Email: bpangilinan@asianlawalliance.org


*Additional counsel for plaintiffs Irma Rodriguez and Jane DeLeon:*

LAW OFFICES OF MANULKIN & BENNETT
Gary H. Manulkin (Cal. Bar No. 41469)
Reyna M. Tanner (Cal. Bar No. 197931)
10175 Slater Avenue, Suite 111
Fountain Valley, CA 92708
Telephone: 714-963-8951
Facsimile: 714-968-4948
gmanulkin@mgblaw.com
reynatanner@yahoo.com

/ / /

- 2 -

Plaintiffs allege as follows:

I

PRELIMINARY STATEMENT

1.      Plaintiffs Irma Rodriguez and Jane DeLeon are married and of the same sex. Plaintiff Rodriguez is a U.S. citizen and resident of California. Plaintiff DeLeon is a Filipino national and a resident of California. Plaintiff Martin Aranas is the son of plaintiff DeLeon and at all relevant times was eligible for lawful permanent resident status as a derivative beneficiary of the application to confer lawful permanent residence on his mother. Defendants denied plaintiff DeLeon's Form I-601 Application for Waiver of Grounds of Inadmissibility solely because DeLeon is married to a person of the same sex, and § 3 of the Defense of Marriage Act, 1 U.S.C. § 7, defines "marriage" under federal law as "only a legal union between one man and one woman as husband and wife."

2.      Plaintiffs Rodriquez and DeLeon have been partners for 20 years. They were lawfully married in California in 2008. They reside together as legally married spouses and plan to remain together for the rest of their lives. They accept all of the duties and responsibilities that are commonly associated with marriage. Plaintiff Martin Aranas, now 25 years old, is the son of plaintiff DeLeon, has lived in the United States since the age of nine years; he will qualify for adjustment of status if plaintiff DeLeon is granted adjustment of status.

3.      Plaintiffs allege that defendants' refusal to grant immigration benefits, including lawful permanent residence, to the spouses of U.S. citizen petitioners solely because their spouses are the same sex violates the substantive due process and equal protection guarantees of the Fifth Amendment to the United States Constitution and 8 U.S.C. § 1152(a)(2), which prohibits discrimination in the issuance of visas based upon a petitioner's or an immigrant visa beneficiary's "sex."

4.      This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 and Fed.R.Civ.Proc. Rule 57, and for review of agency action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Plaintiffs seek a declaration that DOMA § 3, 1 U.S.C. § 7, violates the United States Constitution, as applied to plaintiffs and those similarly situated, by refusing to recognize their lawful marriages for purposes of conferring family-based immigration waivers and benefits. As a direct and proximate result of the violations of the Constitution alleged herein, plaintiffs have been denied, and will continue to be denied, legal protections and benefits under the Immigration and Nationality Act that would be available to them were they spouses of different sexes.

II

JURISDICTION

5. This Court has jurisdiction pursuant to U.S. Const. Art. III; 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1361 (mandamus jurisdiction), and 28 U.S.C. § 2241 (habeas corpus jurisdiction).

- 4 -

6. Plaintiffs' prayer for declaratory relief is brought pursuant to 28 U.S.C. §§ 2201 and 2202.

7.  Venue is properly in this court pursuant to 28 U.S.C. § 1391(b) and (e)(1), (2), and (4), because acts complained of occurred in this district, the plaintiffs reside in this district, defendants have offices in this district, and no real property is involved in this action.

III

PARTIES

8.    Plaintiff, Irma Rodriguez is a U.S. citizen, a resident of California, and is the lawful spouse of plaintiff Jane DeLeon.

9.    Plaintiff Jane DeLeon is a citizen of the Philippines, the lawful spouse of Plaintiff Rodriquez, a resident of California, and the beneficiary of an approved employment-based immigrant visa petition.

10.    Plaintiff Martin R. Aranas is the biological son of plaintiff DeLeon, a citizen of the Philippines, a resident of California, and would qualify for lawful permanent resident status were his mother is granted lawful permanent resident status.

11.    Defendant Janet Napolitano is the Secretary of the United States Department of Homeland Security. Defendant Napolitano is charged with the administration of the United States Department of Homeland Security. Defendant United States Citizenship and Immigration Services is a subordinate agency within the Department of Homeland

Security, and as such is under the authority and supervision of defendant Napolitano. She is sued in her official capacity.

12.     Defendant Alejandro Mayorkas is the Director of defendant the United States Citizenship and Immigration Services, an entity within the Department of Homeland Security with statutory responsibility for adjudicating petitions filed by United States citizens and lawful permanent residents for benefits to "immediate relative" immigrant family members, including lawful spouses of United States citizens and lawful permanent residents. He is sued in his official capacity.

13.     Defendant the United States Citizenship and Immigration Service ("USCIS") is an entity within the Department of Homeland Security with statutory responsibility for the constitutional and lawful adjudication of petitions and applications filed by United States citizens and lawful permanent residents to grant benefits to immigrant family member beneficiaries, including lawful spouses of United States citizens and lawful permanent residents.

IV

CLASS ACTION ALLEGATIONS

14.     Pursuant to Rules 23(a)(1)-(4) and (b)(2) of the Federal Rules of Civil Procedure, plaintiffs bring this action as a class action on behalf of the following proposed class:

All members of lawful marriages whom the Department of Homeland Security,

pursuant to § 3 of the Defense of Marriage Act, 1 U.S.C. § 7, refuses to recognize as spouses for purposes of conferring lawful status and related benefits under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*

15.    The size of the class is so numerous that joinder of all members is impracticable.

16.    The claims of plaintiffs and those of the proposed class members raise common questions of law and fact concerning the constitutionality of DOMA as applied to deny family-based immigration benefits under the INA. This question is common to the named parties and to the members of the proposed class because defendants have acted or will act on grounds generally applicable to both the named parties and proposed class members. Plaintiffs' claims are also typical of the class claims.

17.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants. Prosecution of separate actions would also create the risk that individual class members will secure court orders that would as a practical matter be dispositive of the claims of other class members not named parties to this litigation, thereby substantially impeding the ability of unrepresented class members to protect their interests.

18.     Defendants, their agents, employees, and predecessors and successors in office have acted or refused to act, or will act or refuse to act, on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole. Plaintiffs will vigorously represent the interests of unnamed class members. All members of the proposed class will benefit by the action brought by plaintiffs. The interests of the named plaintiffs and those of the proposed class members are identical. Plaintiffs' counsel include attorneys highly experienced in federal class action litigation and litigation involving the INA and the Fifth Amendment of the United States Constitution.

V

FACTUAL ALLEGATIONS

19.     Plaintiff DeLeon was born on August 21, 1964 in the Philippines. She is a citizen of the Philippines. From about 1984 to 1989 plaintiff DeLeon lived in a common-law "marriage" with Joseph Randolph Aranas. They have two sons born in the Philippines, Mikkel R. Aranas, born in 1985, and plaintiff Martin Aranas, born in 1986.

20.     Plaintiff DeLeon was admitted to the United States on or about December 18, 1989, on a B-2 visitor's visa and has resided here continuously since that time.

21.     When plaintiff DeLeon left the Philippines the country was in turmoil, poverty was endemic, armed opposition groups were confronting the government, and sexual discrimination and repression of women were rampant.

22.     When plaintiff DeLeon entered the United States in 1989, her passport listed her occupation as "housewife" and her name as Jane Francis L. Aranas, although she was not legally married to Joseph Aranas. So-called common-law "marriages" are not unusual in the Philippines and are governed by Article 147 of the Family Code which reads in part, for example, that "[w]hen a man and a woman … live exclusively with each other as husband and wife without the benefit of marriage …, their wages and salaries shall be owned by them in equal shares and the property acquired by both of them through their work or industry shall be governed by the rules on co-ownership."

23.     In the Philippines, plaintiff DeLeon used the name Jane Francis L. Aranas, Francis being her middle name and the "L" standing for DeLeon, her maiden name. It is common in the Philippines for women to adopt the names of their husbands with whom they live exclusively as husband and wife without the benefit of marriage.

24.     Joseph Randolph Aranas followed plaintiff DeLeon to the United States shortly after her entry. Plaintiff DeLeon and Mr. Aranas resided together in the United States until in or about 1991.

25.     Plaintiffs Rodriquez and DeLeon met in Westminster, California, in 1992. They have resided together in a committed life-long relationship for 20 years. They were lawfully married under the laws of California on August 22, 2008. They continue to reside together as a married couple and plan to do so for the rest of their lives.

26.     On or about March 2, 2006, plaintiff DeLeon's employer applied for permanent resident status on her behalf. The visa petition was approved on or about May 22, 2006. Her "priority date" (date in line for a visa) was March 2, 2006. On or about August 16, 2007, plaintiff DeLeon filed an application for adjustment of status under § 245 of the Immigration and Nationality Act, as amended ("INA"). At the time she applied for adjustment of status her priority date was current (there were visa numbers available for the quota under which her employment-based visa was approved). Plaintiff Martin Aranas also applied for adjustment of status as a derivative beneficiary of his mother.

27.     On April 14, 2011, defendants notified plaintiff DeLeon that she appeared to be inadmissible to the United States because she had entered the United States in 1989 as a "housewife," under the name Jane L. Aranas, but was not legally married to Mr. Aranas at the time. The notice alleged that plaintiff DeLeon had entered the U.S. in 1989 by misrepresenting her name and marital status, and was therefore inadmissible under INA § 212(a)(6)(C), which makes inadmissible anyone who obtains a visa or admission to the U.S. by misrepresenting a material fact.

28.     Defendants nevertheless provided plaintiff DeLeon specific instructions on how to apply for a waiver of inadmissibility pursuant to INA § 212(i), 8 U.S.C. § 1182(i), which requires a showing that her removal or denial of adjustment of status would "result in extreme hardship to [her] citizen … spouse or parent …" *Id*.

29.     Plaintiffs did not believe plaintiff DeLeon was eligible for a waiver of inadmissibility based upon hardship to plaintiff Rodriguez. On July 5, 2011, plaintiff DeLeon instead filed an Application for Waiver of Grounds of Inadmissibility, Form I-601, based on the hardship her removal would cause her 92-year old citizen father, who resides both in the U.S. and in the Philippines.

30.     On September 1, 2011, defendants denied plaintiff DeLeon's applications for a waiver of inadmissibility and adjustment of status. Defendants denied plaintiff DeLeon's I-601 waiver application on the ground she had failed to establish that denial of lawful permanent resident status would cause extreme hardship to her citizen father. The waiver denial automatically resulted in a denial of the application for adjustment of status.

31.     After consulting counsel, plaintiffs Rodriquez and DeLeon then determined that pursuant to INA § 212(i) they could renew the I-601 waiver application based upon extreme hardship that plaintiff Rodriquez would suffer if plaintiff DeLeon were denied lawful resident status and required to depart the country.

32.     On or about September 27, 2011, plaintiff DeLeon submitted a timely Motion to Reopen/Reconsider I-601 Denial ("I-601 Motion to Reopen") on the ground that denying her lawful permanent residence and requiring her departure from the United States would cause extreme hardship to her U.S. citizen spouse, plaintiff Rodriquez.

33.    If plaintiff DeLeon is forced to depart the United States, plaintiff Rodriquez

will be forced to leave the United States and relocate to the Philippines, abandon her

employment, and leave her immediate family members, or end a 20-year committed

lifetime relationship and effectively end her marriage.

34.    Factors typically considered by defendants to determine extreme hardship

needed to approve a waiver of inadmissibility are (1) presence of U.S. citizen family

member, (2) ties to the U.S., (3) qualifying relatives, (4) ties outside the U.S., (5)

conditions in the country to which the qualifying relative would relocate, (6) the financial

impact of departure, and (7) significant issues of health "particularly when tied to the

unavailability of suitable medical care in a country to which the qualifying relocating

relative would relocate." *In re Cervantes-Gonzalez*, 22 I&N Dec. 560 (BIA 1999) (en

banc).

35.    Applying these standards to this case:

(1) Plaintiff DeLeon has a U.S. citizen spouse,

(2) Both plaintiff Rodriguez and plaintiff DeLeon have a wide range of ties in the

U.S. through their gainful employment, extended family, friends and community ties they

have developed over the course of their twenty years together in the U.S.

(3) Plaintiff DeLeon has two sons who reside in the United States. Her sister and a

niece also reside in the United States as lawful permanent residents. Plaintiff Rodriguez's

father, mother, three sisters and one brother all are U.S. citizens and reside permanently

in the United States.

(4) Plaintiff Rodriguez has no immediate relatives living in the Philippines. She

has no social, economic, or community ties in the Philippines.

(5) The conditions in the Philippines continue to be marked by rampant

discrimination against women in general and lesbians in particular, criminalization of

lesbians and gay men who show public affection, endemic poverty, substandard housing,

and armed insurgency. Under Article 200 of the Revised Penal Code of the Philippines,

homosexual displays of affection may be penalized by "*arresto mayor* and public

censure," as it is subject to the "grave scandal" prohibition. Article 27 of the Revised

Penal Code of the Philippines provides for incarceration for one month and one day to six

months for a violation of Article 200. The U.S. State Department reports that treatment of

women in the Philippines is highly discriminatory with respect to employment and public

safety. Fifteen percent of women in the Philippines have been raped. http:www.state.gov

(Philippines Report Release April 8, 2011). The State Department reports that women in

police custody are frequently raped, particularly women from marginalized groups, such

as lesbians. The report also notes that the Philippines "has yet to even approve any anti-

discrimination legislation" to protect gay and lesbian citizens. *Id*. The married life shared

by plaintiffs Rodriquez and DeLeon would more likely than not result in their persecution

and possible prosecution were they forced to relocate to the Philippines.

(6) Plaintiffs' relocating to the Philippines would have a catastrophic impact on plaintiff Rodriguez's economic situation inasmuch as she would have to abandon her employment in the United States and seek employment in the Philippines where joblessness is endemic and wages perhaps 10-20 percent of what they are in the United States.

(7) Plaintiffs' relocating to the Philippines could significantly and adversely impact plaintiff Rodriguez's medical condition because of inadequate available care there and the unavailability of prescription medications she is required to take. Plaintiff Rodriguez suffers from stenosis of the left brain that causes extreme pain, disorientation, and numbness. She also suffers hypertension. She may require surgery in the future to address her stenosis, and if her condition worsens rapidly, surgery may be required immediately. Due to her illnesses, plaintiff Rodriguez is required to take several prescription medications. Large areas of the Philippines have no routine access to pharmacies, and one of the prescription medications she is required to take for pain control, Ultram, is not available in the Philippines. The provision of health services in the Philippines is extremely poor for the vast majority of people. Relocating there may well cause plaintiff Rodriguez's medical condition to deteriorate and, if brain surgery is needed, it is unlikely she will receive the medical care possibly needed to save her life, which she would be able to obtain if she remained in the U.S.

36.     The facts presented in plaintiff DeLeon's motion to reopen her I-601 Application for Waiver of Grounds of Inadmissibility would in any similar case (not involving a same sex marriage) result in approval of a waiver of inadmissibility. On information and belief, defendants routinely approve waiver applications based on far less compelling facts than those underlying plaintiff's application.

37.     On November 9, 2011, defendants denied the Motion to Reopen and waiver not because the application failed to show that plaintiff DeLeon's departure from the country would cause plaintiff Rodriquez extreme hardship, but solely because, under DOMA § 3, plaintiff DeLeon was married to someone of the "wrong" sex. The denial states that under the DOMA "Jane DeLeon's 'same-sex spouse' does not qualify as a relative for purposes of establishing hardship." Defendants also informed plaintiff DeLeon that she was no longer authorized for employment. She was further advised that she was now accruing "unlawful presence" in this country; that if she accrues more than six months of unlawful presence she will be barred from the United States for three years; and that if she remains for more than one year she will be barred from the United States for ten years.

38.     Plaintiff Martin Aranas's immigration status is wholly dependent on that of his mother. He is a derivative beneficiary of plaintiff De Leon's visa petition and application to adjust status. A child under the age of 21 receives the same priority date as his or her parent. 22 C.F.R. § 42.53(a). Sons and daughters who are derivative

beneficiaries of a parent's priority date in employment-based categories remain eligible for derivative immigration benefits so long as they are under 21 at the time a visa becomes immediately available. INA § 203(h). Child Status Protection Act, Pub. L. 107-208, 116 Stat. 927 (Aug. 6, 2002) ("CSPA of 2000").

39.    Defendants approved plaintiff De Leon's I-140 Petition in 2006, and an immigrant visa became immediately available to her in July 2007. In August 2007 plaintiff De Leon timely filed an I-485 application for adjustment of status seeking lawful permanent residence for plaintiff Martin Aranas as a derivative beneficiary. Plaintiff Martin Arana was 20 years old at the time of the I-485 filing. His reaching the age of 21 after the date a visa became available to his mother does not bar him from derivative immigration status. However, defendants' denying plaintiff DeLeon's application for adjustment of status disqualifies plaintiff Martin Arana from receiving derivative immigration benefits through any future application for immigration benefits filed on his mother's behalf and strips him of his protection under CSPA of 2000 against aging-out.

40.    Plaintiffs seek preliminary relief to save plaintiff DeLeon and Aranas from forced unemployment or illegal employment and the forced separation of the plaintiffs' family or involuntary relocation to the Philippines *pendent lite*. They seek permanent relief restoring plaintiffs DeLeon and Aranas to the position they would now be in but for the constitutional violations alleged herein.

/ / /

- 16 -

Application of the INA

41.     The purpose of INA § 212(i) is to keep families together when the departure of an immediate family member would cause extreme hardship to a United States citizen or lawful permanent resident spouse or parent. Defendants routinely apply INA 212(i) so as to *preserve* family units in cases in which refusal to grant an inadmissible immigrant a waiver leading to denial of adjustment of status would cause extreme hardship to a U.S. citizen or lawful permanent resident spouse or parent.

42.     The INA nowhere limits the term "spouse" to only include a union between "one man and one woman." The INA does not exclude from its definition of "spouse" those spouses who are the same sex as one another. To the contrary, the INA disallows discrimination in the issuance of visas on the basis of sex. 8 U.S.C. § 1152(a)(2).

43.     In 1990, Congress amended the INA to provide that immigrants could not be denied visas or admission to the United States based on sexual orientation. Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (1990).

44.     A marriage is usually valid for immigration purposes if it is recognized by the law of the state where it occurs. *Matter of Lovo-Lara*, 23 I&N Dec. 746, 748 (BIA 2005). Historically, as long as two people intend to establish a life together at the time of the marriage, the marriage is valid for immigration purposes. *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975). Under the Tenth Amendment to the U.S. Constitution, states reserve all powers not assigned to the federal government, including the classification of a person's

sex and determining the lawfulness of marriages. *Matter of Lovo-Lara*, 23 I&N Dec. at 748.

DOMA's Enactment

45.      DOMA's legislative history identifies several interests that Congress purportedly sought to advance through the law's enactment. The House Report acknowledged that federalism constrained Congress's power, and that "[t]he determination of who may marry in the United States is uniquely a function of state law." H.R. Rep. No. 104-664, at 3 (1996), *reprinted in* 1996 U.S. Code Cong. & Admin. News 2905, 2906-07 ("H. Rep."). Nonetheless, the Report stated that Congress was not "supportive of (or even indifferent to) the notion of same-sex 'marriage'." *Id*. at 12. The authoritative House Report provides several purported reasons for the enactment of DOMA: (1) defending and nurturing the institution of traditional, heterosexual marriage; (2) defending traditional notions of morality; (3) protecting state sovereignty and democratic self-governance; and (4) preserving scarce government resources. *Id*. The Report also claimed interests in "encouraging responsible procreation and child-rearing," and conserving scarce resources. *Id*. at 13, 18.

46.      Although DOMA amended the eligibility criteria for a vast number of federal benefits, rights, and privileges dependent upon marital status either directly under federal law or controlled in some fashion by federal law, the relevant committees did not

- 18 -

engage in any meaningful examination of the scope or effect of the law, much less detail the ways in which federal interests underlying numerous programs would be affected.

47.    The interests identified by Congress and all other interests that might be advanced to justify DOMA's constitutionality are inapposite in the context of federal immigration benefits, and/or are not rationally related to discriminating against married same-sex couples.

48.    Procreation, which Congress erroneously deemed the unique province of "traditional, heterosexual marriage[s]," is not a precondition of marriage, of receipt of federal marital protections, or of the issuance of a family-based immigrant benefits. The federal government's refusal to recognize the marriages of same-sex couples does not nurture, improve, stabilize or enhance the marriages of other married couples. Nor would the federal government's recognition of the marriage of plaintiffs Rodriguez and DeLeon or of other married, same-sex couples degrade, destabilize or have any other deleterious effect on the marriages of other married couples. The claimed federal "interest" in "defending" "traditional heterosexual marriage" simply states the government's intent to discriminate against same-sex couples and provides no independent justification for such discrimination.

49.    The INA sets out several acts involving immoral conduct that make immigrants inadmissible for visas and adjustment of status. *E.g.* INA§ 212(a) (2)(D) (excluding aliens who "has engaged in prostitution within 10 years of the date of the

application"); INA § 212(a)(2)(A)(i)(I) (excluding aliens who have committed a crime involving moral turpitude); INA § 212(a)(2)(D)(iii) (excluding aliens who enter the United States "to engage in any other unlawful commercialized vice"). Nowhere has Congress made a finding that granting visas only to heterosexual immigrants protects the institution of "traditional heterosexual marriage" or "traditional notions of morality."

50.     The INA does not require defendants to deny visas or adjustment of status based upon an immigrant's sex or sexual orientation. There is no credible evidence that lesbian and gay married couples in any way increase the immorality of the communities or countries in which they reside. There is no evidence or rational basis to believe that granting plaintiff DeLeon or similarly situated immigrants adjustment of status will in any way negatively impact "traditional notions of morality."

51.     Nor does DOMA advance any interest in protecting states' sovereignty over marriage; instead, it negates and disregards states' decisions regarding the institution of marriage. The INA and federal immigration authorities fully embrace the myriad of state marriage laws by recognizing as valid for federal immigration purposes heterosexual marriages that have been declared valid pursuant to state law, notwithstanding that the requirements for a valid marriage differ from state to state.

52.     Application of DOMA to prevent plaintiffs from obtaining immigration benefits does nothing to preserve the resources of the federal Government. The Congressional Budget Office has correctly found that enforcing the DOMA saves the

federal government no money, but to the contrary, results in net costs. Cong. Budget

Office, U.S. Cong., *The Potential Budgetary Impact of Recognizing Same-Sex Marriages*

1 (June 21, 2004), http://www.cbo.gov/sites/default/files/cbofiles/ftpdocs/55xx/doc5 5

59/06-2 l-samesexmarriage.pdf.

53.    DOMA and its application to plaintiffs Rodriquez and DeLeon and their

proposed class members deprives plaintiffs and putative class members of substantive

due process by burdening the integrity of their lawful marriages and their most intimate

family relationships.

54.    DOMA on its face discriminates on the basis of sex and implicitly on the

basis of sexual orientation. Such a law requires heightened scrutiny. A classification

triggers heightened scrutiny when (1) the target group has suffered a history of invidious

discrimination, and (2) the characteristics that distinguish the group's members bear no

relation to their ability to perform or contribute to society. In applying heightened

scrutiny courts also have considered the group's minority status and/or relative lack of

political power, and whether group members have obvious, immutable, or distinguishing

characteristics that define them as a discrete group.

55.    The target group in this case has clearly suffered a history of invidious

discrimination. "[F]or centuries there have been powerful voices to condemn homosexual

conduct as immoral," *Lawrence v. Texas*, 539 U.S. 558, 571 (2003), and "state-

sponsored condemnation" of homosexuality has led to "discrimination both in the public

and in the private spheres." *Id.* at 575. To this day, lesbians and gay men remain the subjects of public opprobrium, face the ever-present threat of anti-gay violence, and remain vulnerable to discrimination in employment, housing, and public accommodations.

56.     The characteristics that distinguish the group's members, including plaintiffs DeLeon and Rodriquez, bear no relation to their ability to perform or contribute to society. There exists no credible evidence that sexual orientation bears any relation to one's ability to perform or contribute to society. The psychological and medical community has long confirmed that homosexuality per se entails no impairment in judgment, stability, reliability or general social or vocational capabilities. Gay men and lesbians serve in Congress, in the federal judiciary, and in the Executive Branch of government. Empirical studies have consistently found that lesbians and gay men are as able as heterosexuals to form loving, committed relationships. Plaintiffs Rodriguez and DeLeon illustrate this: They have had a relationship of almost 20 years. They were married as soon as they were legally permitted to do so. They have made a commitment to live together as a family. Like millions of their fellow lesbians and gay men, they are woven into the fabric of everyday America, leading productive lives as spouses, family members, friends, neighbors, and coworkers.

57.     The obstacles to political power for gay men and lesbians are well known. Gay men and lesbians are, both nationally and locally, a minority, comprising about 3.5

percent of the population. They are geographically dispersed, and, unlike many minorities, may go unidentified out of fear of ostracism and even violence, further eroding the potential for political mobilization. Political opposition to legal protections and benefits for gay men and lesbians is powerful, mobilized, and well-funded. There is no federal prohibition against discrimination based on sexual orientation in employment, housing, public accommodations, or education, nor any such protection in 29 states. Openly gay officials are significantly underrepresented in political office in proportion to the gay and lesbian population.

58.     Although not essential to heightened scrutiny, laws that discriminate based on obvious, immutable, or distinguishing characteristics that define persons as a discrete group may trigger heightened scrutiny. Sexual orientation and sexual identity are entirely or largely immutable; they are so fundamental to one's identity that a person should not be required to abandon them. Sexual orientation is inherent to one's very identity as a person. It would work a fundamental injustice to require gay men and lesbians to chose between retaining their identity and somehow changing (if that were even possible) to gain parity with their heterosexual brethren.

59.     Heightened scrutiny is also warranted because DOMA unequally burdens plaintiffs' constitutionally protected interest in the integrity of their families. By its sweeping reclassification of the plaintiffs as "single" or "unmarried" for all federal purposes, DOMA erases their marriages under federal law. By throwing plaintiffs'

marriages into a confusing legal status in which their marriages "count" for some purposes but not others, DOMA erases much of the meaning their marriages would otherwise have—in both public and private settings—and relegates them to second-class status. The right to maintain family relationships free from undue government restrictions is a long-established and fundamental liberty interest.

60.     Heightened scrutiny is also warranted because DOMA intrudes into an area of traditional state prerogative—regulation of marriage and family—and accordingly raises federalism concerns. DOMA represents the first time that the federal government has attempted to mandate a uniform definition of marriage. The absence of precedent for this legislative classification demonstrates an impermissible animus and hostility toward same-sex couples and individuals based upon their sexual orientation.

61.     There exists no fairly conceivable set of facts that could ground a substantial or rational relationship between DOMA and a legitimate government objective in this case. Congress has yet to identify a reason why gay and lesbian individuals who have met their obligations as taxpaying citizens and who are married to someone of the same sex must be denied family benefits available to persons who are married to someone of a different sex. Singling out same-sex couples that are married among all married persons for denial of waivers of inadmissibility is simply an expression of the intent to discriminate against gay people. At bottom, DOMA, 1 U.S.C. § 7, is motivated by

disapproval of gay men and lesbians and their relationships, an illegitimate federal interest.

62.     On February 23, 2011, the Attorney General notified congressional leadership that the Administration had determined that § 3 of DOMA is unconstitutional as applied to same-sex couples whose marriages are legally recognized under state law and that the Department of Justice would no longer defend DOMA § 3 before the federal courts. The Department of Justice believes that discrimination on the basis of sexual orientation must withstand heightened scrutiny and that DOMA § 3 fails to do so.

63.     While defendants rely on DOMA § 3 to deny U.S. citizen plaintiff Rodriguez the right to reside in her own country with her spouse who has an approved visa petition, and to deny plaintiff DeLeon a waiver of inadmissibility, defendants permit a range of *non-citizen* temporary visitors (students, temporary employees, investors, etc.) to have their spouses live with them through the issuance of "accompanying" relative visas. *See, e.g.*, INA §§ 101(a)(15)(E) (Treaty Investor Spouse), 101(a)(15)(F) (student spouse); 101(a)(15)(H)(temporary worker spouse). There is no rational basis for permitting non-citizen visiting immigrants to live with their different-sex spouses in the U.S., while not permitting U.S. citizens to live with their spouses simply because they are of the same sex.

64.     While defendants rely on DOMA § 3 to deny Rodriguez—a U.S. citizen in a 20 year relationship (and three year marriage)—the ability to live here with her spouse,

defendants approve otherwise identical waiver applications sought by different-sex married couples who may have met only a handful of weeks ago over the internet.

65.     At the same time as defendants automatically deny immigration benefits to plaintiffs and their putative class members, defendants have granted and continue to grant family based petitions and waivers to, *inter alia*, different-sex married couples who remain childless for whatever reason, immigrant beneficiaries convicted of crimes or who have engaged in other conduct involving moral turpitude, fiancés of U.S. citizens who are not even married, and different-sex married couples who met over the internet and have been married for only a few days or weeks.

66.     Despite the willingness of plaintiffs Rodriguez and DeLeon to assume the legally imposed responsibilities of marriage at the federal level, just as they do at the state level, and plaintiff DeLeon's willingness to accept all of the responsibilities associated with becoming a lawful permanent resident of the United States, plaintiffs are prevented from doing so by defendants' implementation of the DOMA § 3, 1 U.S.C. § 7.

VI

IRREPARABLE INJURY

67.     Plaintiffs have suffered and will continue to suffer irreparable harm because of defendants' applying DOMA § 3 as alleged herein. Defendants' policies and practices have deprived and will continue to deprive plaintiffs of substantive due process and equal protection in violation of the Fifth Amendment to the United States Constitution.

68.     As a result of defendants' applying DOMA § 3 as alleged herein, plaintiffs Rodriguez and DeLeon imminently face either living apart in different countries, or U.S. citizen plaintiff Rodriquez having to abandon the United States in order to maintain her family life with plaintiff DeLeon. The denial of plaintiff DeLeon's waiver also terminated her and plaintiff Martin Aranas's temporary lawful status and employment authorization of many years, effectively placing in immediate jeopardy their right to continue to be employed, and to remain here other than in "illegal" status pending entry of judgment in this case.

VII

FIRST CLAIM FOR RELIEF

[Fifth Amendment Equal Protection]

69.     Plaintiffs hereby incorporate by reference ¶¶ 1-68 of this Complaint as though fully set forth herein.

70.     Defendants' applying DOMA § 3 to deny family-based immigration waivers and petitions solely based upon a married couples' sexual orientation, and/or the fact that the petitioning party and the immigrant beneficiary are of the same sex, violate the equal protection guarantee of the Fifth Amendment inasmuch as DOMA treats identically situated married persons differently based on their sexual orientation and sex, with no permissible or constitutionally adequate justification.

/ / /

VIII

SECOND CLAIM FOR RELIEF

[Denial of substantive due process]

71.     Plaintiffs hereby incorporate by reference ¶¶ 1-68 of this Complaint as though fully set forth herein.

72.     DOMA and its application to plaintiffs deprives plaintiffs Rodriquez and DeLeon of substantive due process by burdening the integrity of their lawful marriage and their most intimate family relationships. The right to maintain family relationships and personal choice in matters of marriage and family life free from undue government restrictions is a fundamental liberty interest. *Lawrence v. Texas*, 539 U.S. 558 (2003). DOMA substantially burdens plaintiffs' fundamental interest in their existing familial relationships without a rational, substantial, or compelling reason for doing so.

73.     When the government intrudes upon the personal and private lives of lesbians and gay men in a manner that implicates the rights identified in *Lawrence v. Texas*, *supra*, the government must advance an important governmental interest, which it has not done in this case; the government must show that the intrusion significantly furthers that interest, which has not been shown in this case; and the government must show that the intrusion is necessary to further that interest, which it has not shown in this case. *Witt v. Dep't of the Airforce*, 527 F.3d 806 (9th Cir. 2008).

/ / /

X

PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court —

1.  assume jurisdiction of this cause;

2.  certify a class of similarly situated same-sex married couples as proposed herein;

3.  enter declaratory judgment that defendants' applying DOMA § 3 in this and similar cases, and defendants' regulations, policies and practices applying DOMA § 3 against plaintiffs and those similarly situated are unlawful;

4.  issue a temporary injunction enjoining defendants—

a) from removing or detaining plaintiffs DeLeon and Arenas and those similarly situated;

b) from revoking or denying employment authorization to plaintiffs DeLeon and Arenas and those similarly situated; and

c) from deeming plaintiffs DeLeon and Arenas and those similarly situated inadmissable pursuant to 8 U.S.C. § 1182(a)(9)(B)(i), where such persons would not have accrued more than six months in unlawful status but for DOMA § 3;

5.  issue a permanent injunction enjoining defendants from denying United States citizen petitioners and their immigrant spouses approvals of benefits under the INA solely

- 29 -

because the lawfully married U.S. citizens and immigrant beneficiaries are of the same sex;

7. award plaintiffs their costs and attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412; and

8. issue such further relief as the Court deems just and proper.

Dated: July 12, 2012.

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Peter A. Schey
Carlos R. Holguín

PUBLIC LAW CENTER
Julie Greenwald
Monica Ashiku

ASIAN LAW ALLIANCE
Beatrice Ann M. Pangilinan

LAW OFFICES OF MANULKIN & BENNETT
Gary H. Manulkin
Reyna M. Tanner

Peter A. Schey

Carlos R. Holguín

*Attorneys for Plaintiffs*

/ / /

- 30 -

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV12- 1137 JVS (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL
LAW
Peter A. Schey
Carlos R. Holguín
256 S. Occidental Blvd.
Los Angeles, CA 90057
Telephone: (213) 388-8693

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Martin R. Aranas, Irma Rodriguez, Jane Deleon, <br><br> PLAINTIFF(S) <br><br> v. <br><br> Janet Napolitano, Secretary, Department of Homeland Security; Department Of Homeland Security; Alejandro Mayorkas, Director, United States Citizenship and Immigration Services; United States Citizenship & Immigration Services, <br><br> DEFENDANT(S). | **CASE NUMBER** <br><br> SACV12 1137 JNS (MLGx) <br><br><br> **SUMMONS** |

TO:      DEFENDANT(S):

A lawsuit has been filed against you.

Within ___60___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Peter A. Schey & Carlos Holguin_, whose address is _256 S. Occidental Blvd., Los Angeles, CA 90057_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

JUL 1 2 2012

Clerk, U.S. District Court

**JULIE PRADO**

Dated: _____

By: _____
            Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

Martin R. Aranas, Irma Rodriguez, Jane Deleon

**DEFENDANTS**

Janet Napolitano, Secretary, Department of Homeland Security;  Department Of Homeland Security; Alejandro Mayorkas, Director, United States Citizenship & Immigration Services; United States Citizenship & Immigration Services.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW, Peter A. Schey, Carlos R. Holguín, 256 S. Occidental Blvd., Los Angeles, CA 90057; (213) 388-8693. Please see attachment A for additional counsel.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No       ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Challenge to 1 U.S.C. § 7, as applied, as denying due process and equal protection in violation of U.S. Const. Amend. V.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| | ☐ 190 Other Contract | | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

SACV12 1137

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                 CIVIL COVER SHEET                                 Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 09-cv-08564 RGK; 11-cv-01267-SVW; see also 11-bk-17831-TD.

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Martin Aranas: Los Angeles County<br>Jane DeLeon, Irma Rodriguez: Orange County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles and Orange Counties (all claims) | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date June ___, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Civil Cover Sheet – Attachment A

ATTORNEYS FOR PLAINTIFFS, CONT.

*Additional counsel for plaintiff Aranas:*

PUBLIC LAW CENTER
Julie Greenwald
Monica Ashiku
601 Civic Center Drive West
Santa Ana, CA 92701
Telephone: (714) 541-1010

ASIAN LAW ALLIANCE
Beatrice Ann M. Pangilinan
184 Jackson Street, San Jose, CA 95112
Telephone: (408) 287-9710

*Additional counsel for plaintiffs Rodriguez and Leon:*

LAW OFFICES OF MANULKIN & BENNETT
Gary H. Manulkin
Reyna M. Tanner
10175 Slater Avenue, Suite 111
Fountain Valley, CA 92708
Telephone: 714-963-8951