UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Martin R. ARANAS, Irma
RODRIGUEZ, and Jane DELEON;

               Plaintiffs,

       v.

Janet NAPOLITANO, Secretary of the
Department of Homeland Security;
Alejandro MAYORKAS, Director,
United States Citizenship &
Immigration Services;
UNITED STATES CITIZENSHIP &
IMMIGRATION SERVICES; and
DEPARTMENT OF HOMELAND SECURITY;

               Defendants.

SACV 12-1137 CBM (AJWx)

**ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO
DISMISS**

Plaintiffs Martin R. Aranas ("Aranas"), Irma Rodriguez ("Rodriguez"), and Jane DeLeon ("DeLeon") (collectively, "Plaintiffs") challenge the constitutionality of Section 3 of the Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7, as applied to preclude Plaintiffs from receiving certain immigration benefits that are available to heterosexual spouses. Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57 as well as review of agency action pursuant to 5 U.S.C. §§ 701–706. [Docket No. 1.]

1   The matters before the Court, the Honorable Consuelo B. Marshall, United
2   States District Judge presiding, are (1) Defendants Janet Napolitano, Alejandro
3   Mayorkas, United States Citizenship & Immigration Services ("USCIS"), and
4   Department of Homeland Security's ("DHS") (collectively "Defendants")
5   Procedural Motion to Dismiss ("Procedural MTD")[1] and Partial Motion to
6   Dismiss ("Partial MTD") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6); and
7   (2) Bipartisan Legal Advisory Group of the United States House of
8   Representatives' ("Intervenor") Motion to Dismiss pursuant to FRCP 12(b)(1) and
9   12(b)(6) ("Intervenor MTD").  [Docket Nos. 46, 62.]

**JURISDICTION**

11  The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

13  Plaintiff Jane DeLeon ("DeLeon") is a citizen of the Philippines.  (Compl.
14  at ¶ 19.)  From 1984 to 1989, DeLeon lived with non-party Joseph Randolph
15  Aranas in a relationship that is recognized under Philippine law as common-law
16  marriage.  (*Id.*)  DeLeon has two sons from this relationship, both born in the
17  Philippines: non-party Mikkel R. Aranas and plaintiff Martin R. Aranas
18  ("Aranas").  (*Id.*)  DeLeon was admitted to the United States on or about
19  December 19, 1989, on a B-2 visitor's visa and has resided in the United States
20  continuously since that time.  (*Id.* at ¶ 20.)  Non-party Joseph Randolph Aranas
21  followed DeLeon to the United States shortly after DeLeon's arrival, and he and
22  DeLeon lived together until approximately 1991.  (*Id.* at ¶ 24.)

---

[1]   Defendants' Procedural MTD is intended to take "the procedural steps necessary to enable [Intervenor] to present arguments in support of the constitutionality of . . . DOMA." (Partial MTD at 3:3–5.)  Defendants take the position that only the "continuing role of the Executive Branch in this litigation ensures the existence of a justiciable case or controversy." (*Id.* at 3:1–2.)  Intervenor argues that Defendants may not "act as a 'procedural gatekeeper,'" and that Intervenor is a party to the case with the same rights and obligations as any other party with no need to rely on Defendants' "procedural steps."  (Intervenor's Response to Defendants' Motion to Dismiss ("Intervenor Resp.") at 10:2–14, Docket No. 58.)  As Intervenor has also moved to dismiss, Defendants' Procedural Motion is **DENIED** as moot.

2

1       In 1992, DeLeon and Plaintiff Irma Rodriguez ("Rodriguez") met in

2   California.  (*Id*. at ¶ 25.)  Since then DeLeon and Rodriguez have lived together

3   and were married under California law on August 22, 2008.  (*Id*.)

4       Two years earlier, on or around March 2, 2006, DeLeon's employer applied

5   for permanent resident status on her behalf.  (*Id*. at ¶ 26.)  Her visa petition was

6   approved on or around May 22, 2006.  (*Id*.)  DeLeon then filed an application for

7   adjustment of status.  (*Id*.)  DeLeon also filed an I-485 application for adjustment

8   of status for her son Aranas (as a derivative beneficiary of DeLeon).  (*Id*. at ¶ 39.)

9   On April 14, 2011, Defendants notified DeLeon that she (and by extension Aranas

10  as well) was inadmissible because she misrepresented her name and marital status

11  when she first entered the United States in 1989.  (*Id*. at ¶ 27.)  At the time,

12  DeLeon had entered as a "housewife" with the name Jane L. Aranas.  (*Id*.)

13      Defendants provided DeLeon with instructions to apply for a "waiver of

14  inadmissibility," which requires a showing that DeLeon's removal from the

15  United States would result in extreme hardship to her U.S. citizen spouse or

16  parent.  (*Id*. at ¶ 28.)  Initially, DeLeon applied for a waiver of inadmissibility

17  based on the hardship her removal would cause to her elderly father, a U.S.

18  citizen.  (*Id*. at ¶ 29.)  This application was denied on September 1, 2011.  (*Id*. at ¶

19  30.)  Subsequently, on advice from counsel, DeLeon then applied for

20  reconsideration of her waiver of inadmissibility based on the hardship her removal

21  would cause her spouse, Rodriguez, also a U.S. citizen.  (*Id*. at ¶ 31.)  This

22  application was also denied on November 9, 2011, because DeLeon's same-sex

23  spouse does not qualify as a relative for purposes of establishing hardship pursuant

24  to Section 3 of DOMA.  1 U.S.C. § 7.  (*Id*. at ¶ 37.)

25      Defendants move for partial dismissal of Plaintiffs' Complaint on the

26  grounds that Plaintiffs Aranas and Rodriguez lack standing and Plaintiffs have

27  failed to state a claim for either violation of their substantive due process rights

28  under the Fifth Amendment or for sex discrimination under 8 U.S.C. §

1152(a)(1)(A).  Intervenor does not oppose Defendants' motion for partial

dismissal but moves for dismissal of the entire Complaint for failure to state a

claim.

## STANDARD OF LAW

**Federal Rule of Civil Procedure 12(b)(1)**

A party may bring a motion to dismiss the complaint pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure if the court lacks "jurisdiction

over the subject matter."  Fed. R. Civ. P. 12(b)(1).  An attack on jurisdiction may

be either facial or factual.  *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000).  In a facial

attack, the court must accept the allegations in the complaint as true and the

evidence is viewed in the light most favorable to the non-moving party.  *Warren v.*

*Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057 (C.D. Cal. 2001).  In a factual

attack, the court may rely on extrinsic evidence and there is no presumption of

truth given to the factual allegations in the complaint.  *Thornhill Publishing Co.*

*Inc., General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

**Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a

complaint for "failure to state a claim upon which relief can be granted."

Dismissal of a complaint can be based on either a "lack of a cognizable legal

theory or the absence of sufficient facts alleged under a cognizable legal theory."

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  On a

motion to dismiss for failure to state a claim, the court accepts as true all well-

pleaded allegations of material fact and construes them in light most favorable to

non-moving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

1031 (9th Cir. 2008).  To survive a motion to dismiss, the complaint must contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937,

1940, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

1  544, 570 (2007)).  A formulaic recitation of the elements of a cause of action will

2  not suffice.  *Twombly*, 550 U.S. at 555 (citations omitted).

3  **DISCUSSION**

4  When presented with motions to dismiss pursuant to both Fed. R. Civ. P.

5  12(b)(1) and Fed. R. Civ. P. 12(b)(6), the Court must first resolve Defendants' and

6  Intervenor's motions pursuant to Fed. R. Civ. P. 12(b)(1) and satisfy itself that it

7  has subject matter jurisdiction.  *See Alliance For Envtl. Renewal, Inc. v. Pyramid*

8  *Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) ("A district court must generally

9  resolve material factual disputes and establish that it has federal constitutional

10  jurisdiction, including a determination that the plaintiff has Article III standing,

11  before deciding a case on the merits").  Only after the Court is satisfied as to its

12  subject matter jurisdiction may it reach the substance of Plaintiffs' claims.  *See*

13  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, 118 S.Ct. 1003,

14  140 L.Ed.2d 210 (1998).

15  **I.  FED. R. CIV. P. 12(B)(1)**

16  **A.  Standing**

17  "[T]o satisfy Article III's standing requirements, a plaintiff must show

18  (1)[he] has suffered an 'injury in fact' that is (a) concrete and particularized and

19  (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

20  traceable to the challenged action of the defendant; and (3) it is likely, as opposed

21  to merely speculative, that the injury will be redressed by a favorable decision."

22  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180–

23  81, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000).  "The general rule applicable to

24  federal court suits with multiple plaintiffs is that once the court determines that

25  one of the plaintiffs has standing, it need not decide the standing of the others."

26  *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993).  Where it appears that each

27  plaintiff's rights or obligations may differ, however, the court may continue the

28  standing inquiry individually.  *Id.* (determining standing for each plaintiff in First

5

1   Amendment case where one plaintiff had waived First Amendment rights by

2   signing agreement); 13A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

3   PRACTICE AND PROCEEDURE § 3531 (3d ed.) ("a claim as to which one party has

4   standing may lie beyond the standing of another party").

5       **1. DeLeon**

6       Intervenor argues that Plaintiff DeLeon lacks standing because she

7   challenges only DOMA, 1 U.S.C. § 7, and fails to challenge the Immigration and

8   Naturalization Act ("INA") § 212(i)(1), 8 U.S.C. § 1182(i)(1), which also restricts

9   marriage to heterosexual couples.  Thus even if DeLeon is successful in this

10  litigation, her injury will not be redressed.  (Intervenor's Response to Defendants'

11  Motion to Dismiss ("Intervenor Resp.") at 12:9–14:2, Docket No. 58.)

12  Redressability is distinct, however, from the ultimate relief sought by Plaintiffs

13  "[Redressability] focuses, as it should, on whether the injury that a plaintiff alleges

14  is likely to be redressed through the litigation—not on what the plaintiff ultimately

15  intends to do [with his recovery.]"  *Sprint Commc'ns Co., L.P. v. APCC Servs.,*

16  *Inc.*, 554 U.S. 269, 287, 128 S. Ct. 2531, 2542, 171 L. Ed. 2d 424 (2008); *see also*

17  *Bond v. U.S.*, 131 S. Ct. 2355, 2362, 180 L. Ed. 2d 269 (2011).  It is undisputed

18  that DeLeon's application for an I-601 waiver of inadmissibility was denied solely

19  due to DOMA.  (Compl. at ¶ 1; Reply at n.1, Docket No. 64)  It is also undisputed

20  that whether DeLeon ultimately receives a waiver is beyond the scope of this

21  litigation.  (Compl. at ¶¶ 69-73.)  The Court thus finds that Plaintiff DeLeon has

22  standing.

23      **2. Aranas**

24      Defendants argue that Plaintiff Aranas lacks standing to challenge

25  Defendants' denial of his mother's I-601 waiver of inadmissibility.  A party

26  ordinarily "cannot rest his claim to relief on the legal rights or interests of third

27  parties."  *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955

28  (1984).  While the parties have not provided, and the Court has not found, any

authority that is wholly congruent with the facts alleged here, this principle appears to extend to the beneficiaries of immigration petitions.  "[D]istrict courts have held that an alien lacks Article III standing to challenge the denial of an immigration petition where the alien is not the petitioner but merely the beneficiary." *Andros, Inc. v. United States*, C10-303Z, 2010 WL 4983566, at n.6 (W.D. Wash. Dec. 2, 2010) (collecting cases); *see also George v. Napolitano*, 693 F. Supp. 2d 125, 130 (D.D.C. 2010) (employer was sole party with standing to seek review of denial of I-140 work visa, rather than beneficiary employee); *Costelo v. Chertoff*, 258 F.R.D. 600, 609 (C.D. Cal. 2009) (Selna, J.) (stating that the law is unclear whether children of aliens have standing as derivative beneficiaries); *Blacher v. Ridge*, 436 F. Supp. 2d 602, 606 n.3 (S.D.N.Y. 2006) (employer was the only party with standing to seek review of denial of H1-B visa, rather than beneficiary employee).

As in the cases cited, Aranas is not a petitioner but merely a derivative beneficiary of the immigration benefits sought by his mother.  (*See, e.g.,* Compl. at ¶¶ 26, 38-39.)  First, this litigation arises from the denial of an I-601 waiver of inadmissibility to DeLeon, not Aranas.  (*Id*. at 1.)  Second, Plaintiffs admit in their allegations that "Aranas' immigration status is wholly dependent on that of his mother.  He is a derivative beneficiary of plaintiff DeLeon's visa petition and application to adjust status."  (*Id*. at ¶ 38.)  DeLeon's visa petition is an I-140 immigrant worker petition filed by DeLeon's employer on her behalf.  (*Id*. at ¶¶ 26, 39.)  Aranas' application to adjust status is an I-485 petition made by his mother on his behalf.[2]  (*Id*.)  Aranas is not the petitioner bringing either of these petitions.[3]  The Court finds that Aranas lacks standing to challenge the

[2]   At the time the I-485 application was filed, Plaintiff Aranas was twenty years old.  (*Id*.)
[3]   Plaintiffs argue in opposition that *Coleman v. United States* held that the plaintiff therein had standing to seek an injunction against his mother's removal from the United States.  454 F. Supp. 2d 757, 763–65 (N.D. Ill. 2006).  *Coleman* is inapposite.  The plaintiff in *Coleman* was an eight year old U.S. citizen arguing that his mother's deportation would effectively force his self-deportation as well.  (*Id*.)

constitutionality of DOMA § 3 as applied to deny a waiver of inadmissibility to his mother.  The Court hereby **dismisses** Plaintiff Aranas from this action.

### 3. Rodriguez

Defendants also argue that Plaintiff Rodriguez lacks standing.  U.S. citizens generally have "no constitutional right to have his or her alien spouse enter or remain in the U.S."  *See Singh v. Magee*, 165 F.3d 917 (9th Cir. 1998) (agreeing with cases in other circuits that "broadly reject any challenge to a deportation based upon the rights of affected family members"); *Bright v. Parra*, 919 F.2d 31, 33 (5th Cir. 1990) ("the United States citizen spouse has no constitutional right to keep her alien spouse from being deported"); *Almario v. Attorney Gen.*, 872 F.2d 147, 151 (6th Cir. 1989) ("[T]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in this country."); *Burrafato v. U.S. Dept. of State*, 523 F.2d 554, 555 (2d Cir. 1975) ("[N]o constitutional right of a citizen spouse is violated by deportation of his or her alien spouse.").  The sole immigration case cited by Plaintiffs in their opposition is distinguishable because the petitioner in that case was the citizen spouse.  *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 920–21 (N.D. Ill. 2012).  The Court finds that Plaintiff Rodriguez lacks standing to challenge the constitutionality of DOMA § 3 as applied to deny a waiver of inadmissibility to her spouse.  The Court hereby **dismisses** Plaintiff Rodriguez from this action.

## II.    FED. R. CIV. P. 12(B)(6)

**A.    First Cause of Action for Violation of Equal Protection**

    **(1)    Whether Precedent Requires Dismissal of Plaintiffs' Equal Protection Claim**

        **(a) *Baker v. Nelson***

In *Baker v. Nelson*, two men challenged a state law that barred them from marrying, arguing that the statute violated Fourteenth Amendment equal protection.  *Baker v. Nelson*, 291 Minn. 310, 191 N.W.2d 185 (1971).  "[T]he

1    Court 'dismissed for want of a substantial federal question' an appeal from the

2    Minnesota Supreme Court's decision to uphold [the] state statute that did not

3    permit marriage between two people of the same sex." *Perry v. Brown*, 671 F.3d

4    1052, 1082 n.14 (9th Cir. 2012), *cert. granted*, 133 S. Ct. 786, 184 L. Ed. 2d 526

5    (2012) (quoting *Baker*, 409 U.S. 810, 810 (1972)).  This dismissal only

6    "prevent[s] lower courts from coming to opposite conclusions on the precise

7    issues presented and necessarily decided by [the summary dismissal]." *Mandel v.*

8    *Bradley,* 432 U.S. 173, 176, 97 S. Ct. 2238, 2240, 53 L. Ed. 2d 199 (1977).

9         The First and Second Circuits "have . . . concluded that *Baker* does not

10   control equal protection review of DOMA." *Windsor v. United States*, 699 F.3d

11   169, 178 (2d Cir. 2012), *cert. granted*, 133 S. Ct. 786 (2012); *Massachusetts v.*

12   *U.S. Dep't of HHS*, 682 F.3d 1, 8 (1st Cir. 2012).   While the Ninth Circuit has not

13   considered this issue in the context of a challenge to DOMA, district courts in the

14   Ninth Circuit have agreed with the First and Second Circuits that *Baker* does not

15   foreclose equal protection review of DOMA. [4]   The Court finds that "the precise

16   issues presented and necessarily decided" in *Baker* are not presented here and

17   *Baker* does not foreclose consideration of this equal protection challenge to

18   DOMA.

19             **(b) *Adams v. Howerton***

20        In *Adams v. Howerton*, two men challenged the Immigration and

21   Naturalization Service's ("INS") determination that their state marriage did not

22   qualify petitioner's same sex spouse for immigration status as an immediate

23   relative of an American citizen.  673 F.2d 1036, 1041 (9th Cir. 1982).  The Ninth

24   Circuit's decision in *Adams v. Howerton* held the term "spouse" for purposes of

25   INA § 212(i)(1) was limited to heterosexual spouses.  (*Id.*)  In reaching its

26

27   ───────────────

   [4]      *See, e.g.*, *Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, n.5 (N.D. Cal.
28   2012) (White, J.), *initial hearing en banc denied*, 680 F.3d 1104 (9th Cir. 2012); *Dragovich v.*
     *U.S. Dept. of Treasury*, 872 F. Supp. 2d 944, 952 (N.D. Cal. 2012) (Wilken, J.).

1   decision, the Ninth Circuit assumed that the same-sex marriage was valid but

2   found that same-sex spouses did not qualify for immigration benefits for four

3   reasons.  First, the Ninth Circuit noted that "we must be mindful that the INS . . .

4   has interpreted the term 'spouse' to exclude a person entering a homosexual

5   marriage."  *Id*. at 1040.  Second, the Ninth Circuit found nothing in the INA to

6   suggest that "spouse" should be construed to include homosexual spouses and thus

7   used the "ordinary, contemporary, common meaning" of spouse as a heterosexual

8   status only.  *Id*.  Third, the Ninth Circuit found that the only way to reconcile the

9   then-existing exclusion on homosexual immigrants and the definition of "spouse"

10  in the immigration benefits context was to interpret "spouse" to exclude same-sex

11  spouses.  *Id*. at 1040–41.  Finally, the Ninth Circuit held that the INA's exclusion

12  of same-sex spouses satisfied rational basis review because homosexual marriages

13  did not produce offspring, were not recognized in most states, and violated

14  traditional and prevailing social mores.[5]  *Id*. at 1043.

15         Approximately thirty-one years later, these bases for the *Adams* decision are

16  irreconcilable with intervening statutory and policy changes.  "A district court

17  bound by circuit authority . . . has no choice but to follow it, even if convinced

18  that such authority was wrongly decided."  *Hart v. Massanari*, 266 F.3d 1155,

19  1175 (9th Cir. 2001).  If, however, a new or amended statute "so recast[s] the

20  statutory landscape that the rationale for [the prior circuit authority] has been

21  eliminated," then that prior authority "is no longer the law of the circuit."

22  *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1170, 1175 (9th Cir. 2003).  First,

23  Defendant DHS, successor agency to the INS, concedes that DeLeon would

24  qualify as a spouse under the INA but for DOMA.  (Notice to the Court, Exs. 1–3,

---

25  [5]       The Ninth Circuit has since disapproved these justifications in *Perry v. Brown*, holding

26  that a California constitutional amendment restricting marriage to opposite-sex couples, following a California Supreme Court decision that permitted such marriages, did not "(1)

27  further[] California's interest in childrearing and responsible procreation, [or] (2) [California's interest in] proceeding with caution before making significant changes to marriage."  *Perry*, 671

28  F.3d 1052 at 1086.

1    Docket No. 5; *see also* Combined Exhibits in Support of Motions for Preliminary

2    Injunction and Class Certification ("Combined Exhibits") at Ex. 1 (USCIS denial

3    letter citing only DOMA and not INA), Docket No. 89.)  Second, dictionary

4    definitions of the term "spouse," which the *Adams* decision referenced, now

5    include gender-neutral definitions of "spouse."  *See, e.g.*, Black's Law Dictionary

6    (9th ed. 2009); Merriam-Webster's Collegiate Dictionary 1135 (10th ed. 2001).

7    Third, in 1990, eight years after *Adams*, Congress eliminated the bar to

8    homosexual immigration cited by the *Adams* decision.  (Pub. L. No. 101-649, §

9    601, 104 Stat. 4978 (1990) (amending 8 U.S.C. § 1182); *Dragovich*, 872 F. Supp.

10   2d at n.6; *see also* Defendants' Opposition to Intervenor MTD ("Dfdts. Opp'n to

11   Intervenor MTD") at n.4, Docket No. 51.)

12          The Court finds that INA § 212(i)(1), as interpreted by the *Adams* decision,

13   does not foreclose its consideration of this equal protection challenge to DOMA.[6]

14          **(2)   Level of Scrutiny**

15          The rule in the Ninth Circuit is that homosexuality is not a suspect or quasi-

16   suspect classification requiring heightened scrutiny.  *See High Tech Gays v. Def.*

17   *Indus. Sec. Clearance Office*, 895 F.2d 563, 571 (9th Cir. 1990) ("We . . . hold

18   that the district court erred in applying heightened scrutiny . . . and that the proper

19   standard is rational basis review.")  In 2008, the Ninth Circuit clarified that

20   rational basis review applies to equal protection challenges concerning

21   homosexuality.  *Witt v. Dep't of Air Force*, 527 F.3d 806, 821 (9th Cir. 2008) ("[A

22   prior case] clearly held that [the military's Don't Ask Don't Tell policy] does not

23   violate equal protection under rational basis review . . . and that holding was not

24   disturbed by [*Lawrence v. Texas*, 539 U.S. 558 (2003)].")  *See also Diaz v.*

---

25   [6]      *Accord Dragovich v. U.S. Dept. of Treasury*, 872 F. Supp. 2d 944, 952 (N.D. Cal. 2012)

26   (Wilken, J.); *Commonwealth of Massachusetts v. U.S. Dep't of HHS*, 698 F.Supp. 234 (D. Mass 2010*). But see  Lui v. Holder*, No: 2:11-CV-01267, 2011 U.S. Dist. LEXIS 155909 (C.D. Cal.

27   Sept. 28, 2011) (Wilson, J.) (appeal dismissed by parties); *Barragan v. Holder*, No CV 09-08564, 2010 U.S. Dist. LEXIS 144791 (C.D. Cal. April 30, 2010) (Klausner, J.) (appeal

28   dismissed by parties).

1  *Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (affirming district court's use of

2  rational basis review to find Nevada's state employee benefits program

3  unconstitutional as applied to same-sex couples).[7]

4      **(3)    Whether DOMA § 3 Survives Rational Basis Review**

5        When a law neither burdens a fundamental right nor targets a suspect class,

6  a court shall uphold the legislative classification "if there is a rational relationship

7  between the disparity of treatment and some legitimate governmental purpose."

8  *Armour v. City of Indianapolis, Ind.*, 132 S. Ct. 2073, 2080, 182 L. Ed. 2d 998

9  (2012) (citations omitted).  "A statute is presumed constitutional . . . and '[t]he

10  burden is on the one attacking the legislative arrangement to negative every

11  conceivable basis which might support it.'"  *Heller v. Doe by Doe*, 509 U.S. 312,

12  320, 113 S. Ct. 2637, 2643, 125 L. Ed. 2d 257 (1993).  Nonetheless, "[t]he State

13  may not rely on a classification whose relationship to an asserted goal is so

14  attenuated as to render the distinction arbitrary or irrational."  *City of Cleburne,*

15  *Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446, 105 S. Ct. 3249, 3258, 87 L. Ed.

16  2d 313 (1985).

17        Intervenor contends that DOMA is supported by six rationales, all of which

18  independently justify the legislation under rational basis review.  (Intervenor MTD

19  at 17:21–29:14.)  These are (1) maintaining a uniform federal definition of

20  marriage, (2) preserving the public fisc and respecting prior legislative judgments,

21  (3) exercising caution, (4) recognizing opposite-sex couples' unique ability to

22  ─────────────

23  [7]     *But see In re Levenson*, 587 F.3d 925, 931 (9th Cir. 2009) (declining to determine whether rational basis or heightened scrutiny review should be used because even under rational basis review, "the application of DOMA . . . violate[d] the Due Process Clause of the Fifth Amendment," but noting that heightened scrutiny could be appropriate); *Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 289 (N.D. Cal. 2012) (White, J), initial hearing in banc denied, 680 F.3d 1104 (9th Cir. 2012) ("[T]he appropriate level of scrutiny to use when reviewing statutory classifications based on sexual orientation is heightened scrutiny.")  None of the Ninth Circuit authorities cited by Plaintiffs and Defendants are to the contrary because none were decided after the Ninth Circuit's 2008 decision in *Witt*.  (*See, e.g.*, Pls.' Opp'n to Intervenor MTD at 17–24, Docket No. 71; Defs.' Opp'n to Intervenor MTD at 8–10, Docket No. 75.)

1  procreate, (5) incentivizing the raising of children by their biological parents, and

2  (6) encouraging childrearing in a setting with both a mother and a father.

3      The Ninth Circuit has recently disapproved or rejected all but the first

4  justification.[8]  *See Perry*, 671 F.3d at 1088 ("There is no rational reason to think

5  that taking away the designation of 'marriage' from same-sex couples would

6  advance the goal of encouraging California's opposite-sex couples to procreate

7  more responsibly"); *Diaz v. Brewer*, 656 F.3d 1008, 1014 (9th Cir. 2011)

8  ("[D]enial of benefits to same-sex domestic partners cannot promote marriage

9  [and] . . . [cost] savings depend upon distinguishing between homosexual and

10  heterosexual employees, similarly situated, and such a distinction cannot survive

11  rational basis review.")  This Court will focus on Intervenor's remaining argument

12  that DOMA is rationally related to maintaining a uniform federal definition of

13  marriage.

14      Other courts to consider Intervenor's uniformity argument have expressed

15  doubt that DOMA § 3 is rationally related to ensuring uniformity.  State law

16  traditionally governs marriage recognition, and DOMA "disrupted the long-

17  standing practice of the federal government deferring to each state's decisions as

18  to the requirements for a valid marriage."  *In re Levenson*, 587 F.3d  at 933; *see*

19  *also Golinski*, 824 F. Supp. 2d at 1002 ("DOMA actually undermined

20  administrative consistency by requiring that the federal government . . . discern

21  which state definitions of marriage are entitled to federal recognition.");

22  *Dragovich*, 872 F. Supp. 2d at 958 ("DOMA undermines uniform recognition of

23  ───────────────

24  [8]      But the First and Second Circuits have both stated that DOMA likely survives rational basis review.  *See, e.g.*, *Windsor v. United States*, 12-2335-CV L, 2012 WL 4937310, at *180

25  (2d Cir. Oct. 18, 2012) ("So a party urging the absence of any rational basis takes up a heavy load. . . .  [T]he law was passed by overwhelming bipartisan majorities in both houses of

26  Congress; it has varying impact on more than a thousand federal laws; and the definition of marriage it affirms has been long-supported and encouraged."); *Massachusetts v. U.S. Dept. of*

27  *Health & Human Servs.*, 682 F.3d 1, 9 (1st Cir. 2012) ("Under such a rational basis standard, the . . . plaintiffs cannot prevail. . . .  Congress could rationally have believed that DOMA would

28  reduce costs.").

marriage, by requiring federal agencies to discern which state law marriages are acceptable for federal recognition and which are not."); *Gill v. Office of Pers. Mgmt.*, 699 F. Supp. 2d 374, 394 (D. Mass. 2010), *aff'd sub nom. Massachusetts v. U.S. Dept. of Health & Human Servs.*, 682 F.3d 1 (1st Cir. 2012) ("DOMA does not provide for nationwide consistency in the distribution of federal benefits among married couples.  Rather, it denies to same-sex married couples the federal marriage-based benefits that similarly situated heterosexual couples enjoy.").  *But see Windsor v. United States*, 699 F.3d 169, 202 (2d Cir. 2012) (Straub, J., dissenting) ("That the federal government often defers to state determinations regarding marriage does not obligate it to do so. . . .  [W]hen people marry for immigration purposes, the federal government may validly deem the marriage 'fraudulent,' even though it remains valid under state law.").

This Court finds that the broad distinction created by DOMA § 3 is not rationally related to Congress' interest in a uniform federal definition of marriage. *See Romer v. Evans*, 517 U.S. 620, 633, 116 S. Ct. 1620, 1627, 134 L. Ed. 2d 855 (1996); *Johnson v. Robison*, 415 U.S. 361, 374–75, 94 S. Ct. 1160, 1169, 39 L. Ed. 2d 389 (1974) ("A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.").  Contrary to Intervenor's argument, DOMA § 3 does not "ensur[e] that similarly situated couples will be eligible for the same federal marital status regardless of the state in which they live."  (Intervenor MTD at 17:21–22.) Opposite-sex couples may receive federal marriage-based benefits if joined in a valid state marriage.  Same-sex couples will not, even if like Plaintiffs, they are joined in a valid state marriage.  The Court further finds that Plaintiffs have stated a claim that DOMA § 3 violates their equal protection rights.

**B.      Second Cause of Action for Denial of Substantive Due Process**

To sustain a due process challenge, Plaintiff DeLeon must show that her

1  "right to maintain family relationships and personal choice in matters of marriage

2  and family life free from undue government restrictions" is a qualifying liberty

3  interest of which she was deprived.  (Compl. at ¶ 72; *Hernandez-Mezquita v.*

4  *Ashcroft*, 293 F.3d 1161, 1165 (9th Cir. 2002).)  There is little question that

5  DeLeon has a liberty interest in "autonomy . . . in [her] personal decisions relating

6  to marriage, procreation, . . .family relationships, [and] child rearing"  (Opp'n to

7  Partial MTD at 13:11-23 (citing to *Lawrence v. Texas*, 539 U.S. 558 (2003)).)  It is

8  not readily apparent, however, how DOMA infringes on DeLeon's liberty

9  interests.  *Compare Lawrence*, 539 U.S. at 575-579 (criminal penalties for certain

10  sexual conduct are unconstitutional as applied to consenting adults at home); *Witt*

11  *v. Dep't of Air Force*, 527 F.3d 806, 809 (9th Cir. 2008) (unconstitutional to

12  discharge of members of armed forces for homosexual activity).  Unlike the

13  statute at issue in *Lawrence* and the policy at issue in *Witt*, DOMA has not

14  imposed any penalty on DeLeon based on her homosexuality.  Plaintiff DeLeon's

15  substantive due process rights thus are not implicated by DOMA.  The Court

16  hereby **dismisses** Plaintiffs' Second Cause of Action **with prejudice**.

17      ///

18      ///

19      ///

20      ///

21      ///

22      ///

23      ///

24      ///

25      ///

26      ///

27      ///

28

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and **DENIES** Intervenor's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court hereby **DISMISSES** Plaintiffs Aranas and Rodriguez and Plaintiff's Second Cause of Action.[9]

**IT IS SO ORDERED.**

DATED:  April 19, 2013                    By _____
                                          CONSUELO B. MARSHALL
                                          UNITED STATES DISTRICT JUDGE

---

[9]      It is unclear to the Court whether Plaintiffs also seek relief for sex discrimination pursuant to 8 U.S.C. § 1152(a)(2).  (Compl. at ¶¶ 3, 42.)  Although § 1152(a)(2) is briefly referenced in the Complaint, Plaintiffs did not include this cause of action in their Prayer for Relief and did not oppose Defendants' Partial Motion to Dismiss this cause of action.  (See Partial MTD at 10:3–19.)  The Court assumes Plaintiffs did not intend to bring a claim for sex discrimination.