CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos R. Holguín (Cal. Bar No. 90754)
256 S. Occidental Blvd.
Los Angeles, CA 90057
Telephone: (213) 388-8693 (Schey Ext. 304, Holguín ext. 309)
Facsimile: (213) 386-9484
pschey@centerforhumanrights.org
crholguin@centerforhumanrights.org

*Additional counsel listed next page*

*Attorneys for plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| Martin R. ARANAS,<br>Irma RODRIGUEZ, and<br>Jane DELEON,<br><br>                    Plaintiffs,<br><br>v.<br><br>Janet NAPOLITANO, Secretary of the<br>Department of Homeland Security;<br>Alejandro MAYORKAS, Director, United<br>States Citizenship & Immigration<br>Services;<br>UNITED STATES CITIZENSHIP &<br>IMMIGRATION SERVICES; and<br>DEPARTMENT OF HOMELAND<br>SECURITY,<br><br>                    Defendants. | SACV12-01137 CBM (AJWx)<br><br>PLAINTIFF'S RESPONSE TO<br>DEFENDANTS' EX PARTE<br>APPLICATION FOR A STATUS<br>CONFERENCE, SUSPENSION OF<br>BRIEFING SCHEDULE<br><br><br><br><br><br><br><br>Telephonic Hearing: July 13, 2013<br>Time: 8:00 a.m.<br>Hon.  Consuelo B. Marshall<br>Spring St., Courtroom No. 2 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Additional counsel for plaintiff Aranas:*

PUBLIC LAW CENTER
A.  Christian Abasto (Cal. Bar No. 190603)
601 Civic Center Drive West
Santa Ana, CA 92701
Telephone: (714) 541-1010 (Ext. 277)
Facsimile: (714) 541-5157
cabasto@publiclawcenter.org

ASIAN LAW ALLIANCE
Beatrice Ann M. Pangilinan (Cal. Bar No. 271064)
184 Jackson Street, San Jose, CA 95112
Telephone: (408) 287-9710
Facsimile: (408) 287-0864
Email:  bpangilinan@asianlawalliance.org

*Additional counsel for plaintiffs DeLeon:*

LAW OFFICES OF MANULKIN & BENNETT
Gary H. Manulkin (Cal. Bar No. 41469)
Reyna M. Tanner (Cal. Bar No. 197931)
10175 Slater Avenue, Suite 111
Fountain Valley, CA 92708
Telephone: 714-963-8951
Facsimile: 714-968-4948
gmanulkin@mgblaw.com
reynatanner@yahoo.com

*/ / /*

Response to Defendants' Ex Parte Application for Status Conf and Stay of Briefing

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

– II –

TABLE OF CONTENTS

I   Defendants now want yet more delay for no good reason .................................... 3

II   The decisions in *A. L. Mechling Barge Lines, Inc*. and *Penthouse Int'l, Ltd.*
     Provide No Support for a Further Stay in this case ........................................... 9

III   Conclusion ...................................................................................... 16

TABLE OF AUTHORITIES

**Cases**

*A.L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331, 7 L.
Ed. 2d 317, 82 S. Ct. 337 (1961) ...................................................... 10, 15

*American Fed. of Gov't Employees v. Reagan*, 276 U.S. App. D.C.
309, 870 F.2d 723 (D.C. Cir. 1989) ......................................................... 16

*Catholic Social Services v. Meese,* 664 F.Supp. 1378 (E.D. Cal. 1987) .................... 7

*Catholic Social Servs. v. INS*, 232 F.3d 1139 (9th Cir. 2000) ........................... 7

*Chamber of Commerce v. United States Dep't of Energy*, 200 U.S.
App. D.C. 236, 627 F.2d 289 (D.C. Cir. 1980) ............................................. 15

*City of Los Angeles v. Lyons*, 461 U.S. 95, 75 L. Ed. 2d 675, 103 S.
Ct. 1660 (1983) .......................................................................... 14

*Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 81 L. Ed.
2d 483, 104 S. Ct. 2576 (1984) ........................................................... 16

*Hollister Ranch Owners' Ass'n v. FERC*, 245 U.S. App. D.C. 172, 759
F.2d 898 (D.C. Cir. 1985) ................................................................ 13

*National Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365 (9th Cir.
1984) ...................................................................................... 7

*Northwest Pipeline Corp. v. FERC,* 274 U.S. App. D.C. 167, 863 F.2d
73 (D.C. Cir. 1988) ...................................................................... 12

*Ortiz v. Meissner*, 179 F.3d 718 (9th Cir. 1999)........................................... 7

*Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (DC Cir. 1991) ......................... 10

*Reeve Aleutian Airways v. United States*, 281 U.S. App. D.C. 306, 889

Response to Defendants' Ex Parte Application for Status Conf and Stay of
Briefing

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

– iii –

F.2d 1139 (D.C. Cir. 1989) .................................................................................. 16

*Tennessee Gas Pipeline,* 606 F.2d 1373 (D.C. Cir. 1979) ......................................... 13

*United States v. Munsingwear,* 340 U.S. 36, 95 L. Ed. 36, 71 S. Ct.
104 (1950) ......................................................................................................... 12

*United States v. Windsor,* __U.S. __; 2013 U.S. LEXIS 4921, 2013
WL 3196928 (June 26, 2013) ................................................................................ 1

*/ / /*

Response to Defendants' Ex Parte Application for Status Conf and Stay of
Briefing

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- iv -

PLAINTIFF'S RESPONSE TO DEFENDANTS' EX PARTE APPLICATION FOR A STATUS CONFERENCE, SUSPENSION OF BRIEFING SCHEDULE

At defendants' behest, on April 24, 2013, the Court stayed further proceedings in this action pending the ruling of the United States Supreme Court in *United States v. Windsor*, No. 12-307, on the ground that the Supreme Court's ruling "will simplify the issues before this Court." Dkt. 129 at 2.

On June 26, 2013, the Supreme Court held that DOMA § denies due process and equal protection in violation of the Fifth Amendment to the U.S. Constitution. *United States v. Windsor*, __U.S. __; 2013 U.S. LEXIS 4921, 2013 WL 3196928 (June 26, 2013). The raison d'être of the Court's stay order having been wholly fulfilled, and the Supreme Court's having fully confirmed this Court's interlocutory ruling that DOMA § 3 is unconstitutional, there would appear no reason for further delaying class members relief from defendants' having applied DOMA § 3 to reduce the lawful spouses of U.S. citizens to the status of unauthorized entrants solely because they are the "wrong" sex. Yet more and more delay is all defendants seek by way of the instant ex parte application.

Plaintiff, of course, appreciates that defendants' adjusting their policies and practices in the wake of *Windsor* will take time. However, the Supreme Court's ruling cannot have surprised defendants. After all, they recognized over two years ago that DOMA § 3 was unconstitutional, and numerous lower courts—including this Court—so ruled, virtually unanimously, months before the decision in *Windsor* was announced. It is hardly unreasonable to expect that defendants would have done

at least some planning for the contingency that the Supreme Court would agree with them that DOMA § 3 is indeed constitutionally infirm.

And, of course, had defendant Citizenship and Immigration Services (CIS) acted with even modest prudence and foresight, it would *not* have summarily denied class members' immigration petitions and applications while the Supreme Court decided *Windsor*, but would instead have held their applications and petitions in abeyance, thus allowing the spouses of U.S. citizens to work lawfully in the United States and avoid accumulating time toward inadmissibility. The fundamental irony and injustice here is that while defendants unabashedly seek more and more delay in this Court, they obstinately refused to delay casting class members into the undocumented underground while *Windsor* was being decided all the while knowing that doing so was in all probability unconstitutional.

Yet even more disconcerting is that defendants say *nothing* about when, if, or how they intend to make class members whole. Plaintiff has repeatedly advised defendants that what she seeks at this juncture are substantive discussions on resurrecting plaintiff class members from the undocumented underground and CIS's promptly authorizing class members, including two proposed intervening class members who have a clear and uncontested right to work, to do so.

But rather than discuss how to promptly extend to aggrieved class members interim employment authorization, defendants seek carte blanche to continue down an opaque path whose only signage reads, "Expect indefinite delay ahead."

Defendants long ago told this Court they agreed with plaintiffs on the merits that DOMA was unconstitutional, but opposed a preliminary injunction to allow plaintiff and class members to be legally employed and to stay their accumulation of unauthorized presence only "because they have not shown a likelihood that there are class members who are suffering imminent and irreparable harm." Dkt. 39, Opp. to Motion for Preliminary Injunction, p. 1.[1] Months before defendants' September 14, 2012, opposition was filed, plaintiffs counsel had brought the plight of plaintiffs and class members to defendants attention and sought through administrative advocacy interim relief for plaintiffs and class members, to no avail.

I     DEFENDANTS NOW WANT YET MORE DELAY FOR NO GOOD REASON

Defendants now want even more delay because DOMA is no longer being enforced and this Court "previously held that even when it was being enforced, Plaintiffs had failed to establish future irreparable injury without the benefit of injunctive relief." Dkt. 136, Ex Parte Application for a Status Conference, Suspension of Briefing Schedule at 4.

However, as defendants' April 26, 2013, submission and earlier submissions make clear—

1) "USCIS has, in fact, denied I-130 Petitions for Alien Relative and applications for waivers and adjustment of status since October 5, 2012, based on" DOMA § 3, Dkt. 131 at 2;

---

[1] Further, defendants argued, any "such harm is even less likely in the time frame presented," given that the *Windsor* case had been appealed to the Supreme Court. *Id*.

- 3 -

2) defendants grant class members "deferred action" and employment authorization "only in extraordinary circumstances…" *Id*. at 4 (emphasis added);[2]

3) defendants acknowledge that "[t]he accrual of unlawful presence can lead to significant bars to admission to the United States, should Ms. DeLeon leave the country [to obtain an immigrant visa] and attempt to re-enter." Dkt. #62 at 19; and

4) defendants acknowledge that unauthorized employment, even if engaged in to survive, may also lead to future inadmissibility. 8 U.S.C. § 1255(c)(2); *see also See* Dkt. 132-1, Memorandum in Support of Motion to Modify Stay, etc., at 7 fn. 4.

When defendants' opposed the issuance of even a modest interim injunction allowing class members to work, they argued that "economic injury of this sort [is] not be sufficient to warrant a preliminary injunction, …" Dkt. 39, Opp. to Motion for Preliminary Injunction, p. 18. In case this far-fetched argument didn't work, defendants also made much of the so-called "Morton memos," attached as exhibits to defendants' opposition, and argued that Plaintiffs had provided "no evidence that there are putative class members in a similar circumstance who have lost work authorization based upon DOMA." *Id*. at 22.

---

[2] Defendants further clarify that their prosecutorial discretion memos address *only* whether DHS immigration enforcement agencies, typically ICE, will proceed against a class member in removal or deportation proceedings. *See* Dkt. 131 at 3-4 and n.3 ("USCIS therefore does not exercise prosecutorial discretion pursuant to the Morton memo.").

As explained below, the favorable exercise of prosecutorial discretion is at most tangentially related to deferred action, work authorization, and the accrual of unauthorized presence.

To insure that the Court never found out how many class members were in fact in the same situation as plaintiff DeLeon (having been denied employment authorization and temporary authorized status), defendants refused to cooperate in even minimal discovery that would have disclosed that likely hundreds of class members had been denied not only interim relief, but also adjustment of status based on DOMA. Defendants knew there WAS in fact evidence "that there are putative class members in a similar circumstance who have lost work authorization based upon DOMA," but it was only in their possession, and they successfully fought to avoid disclosing it.

Next, defendants filed a "supplement" to their opposition to issuance of a preliminary injunction, submitting a U.S. Immigration and Customs Enforcement "memorandum" dated October 5, 2012, regarding the "Applicability of Prosecutorial Discretion Memoranda to Certain Family Relationships," misleadingly arguing that "[t]his memorandum, … which applies on a case-by-case basis to individuals who are in a committed, long-term same-sex relationship, … demonstrates that it is less likely Plaintiffs or other putative class members will suffer irreparable harm prior to final judicial resolution of the constitutionality of Section 3 of the Defense of Marriage Act." Dkt. 82, Defendants' Notice of Supplemental Authority.

It turns out the Morton memos offered no plaintiff or class member interim employment authorization, or temporary authorized status, and defendants *never* treated same-sex marriages as an "exceptional" circumstance warranting granting them deferred action status to address the harm of being forced not to work or to

work illegally.

There was more to be misled about. It is also now clear that defendants kept issuing DOMA-related denials after this case was filed, and during and after the hearing on the motion for a preliminary injunction. As we've discussed at length in plaintiff's renewed motion for a preliminary injunction, this Court was wrongly convinced no further such "adverse" decisions were being rendered as of the time of the preliminary injunction hearing.

Finally, defendants argued in favor of delaying interim relief because any preliminary injunction before the US Supreme Court ruled on DOMA's constitutionality would "cause the United States irreparable harm." Dkt. 39 at 24. That concern is obviously now moot and warrants reconsideration of interim relief.

There is no question but that defendants want this Court's stay to remain in effect indefinitely so that while plaintiff DeLeon, the proposed intervening plaintiffs, and class members suffer along with no employment authorization and accumulating unauthorized presence, defendants can decide for themselves if, when and how they will adjudicate new same-sex petitions and applications; if, when and how they may identify and reopen pre-June 2013 petitions, applications and waivers they denied; if, when and how they may address the interim relief they denied to plaintiff DeLeon, the intervening plaintiffs, and hundreds or thousands of class; if, when, and how they will remedy grounds of inadmissibility now present solely because defendants' refused to hold DOMA cases in abeyance, etc.

As things stand, a year after plaintiffs sought administrative relief from

defendants, plaintiff Deleon (and proposed intervenors and hundreds of class members) are still without interim relief and continue under defendants' most recent notice addressed to them: "[You] cannot legally work in the United States and [are] now accruing unlawful presence in the United States." Dkt. #62 at 19.

In class action cases the federal courts have routinely recognized that forcing class members not to work or to work illegally is irreparable harm that will be protected against in both interim and final relief.[3]

*Indeed, this appears to be the first certified class action case in the nation in which defendants have convinced a court that the "deferred action" program affords plaintiffs or class members denied temporary employment authorization a viable*

---

[3] The Ninth Circuit has held that the hardship to an alien from being unable to work to support oneself and one's family is beyond question. *See, e.g., National Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984); *Catholic Social Services v. Meese*, 664 F.Supp. 1378, 1388 (E.D. Cal. 1987) (injunction including temporary work permits and stays of deportation); *Catholic Social Servs. v. INS*, 232 F.3d 1139, 1141, 1145 (9th Cir. 2000) (the district court "enjoined the government … from executing final orders of removal or from revoking or denying work authorizations of any class member;" "the district court acted within its discretion in granting a preliminary injunction protecting members of the class…"). *See also Ortiz v. Meissner*, 179 F.3d 718, 722 (9th Cir. 1999) ("Plaintiffs, according to the government, must wait until they have been ordered deported to seek interim work authorization in a court of appeals review of the deportation proceeding. Yet by that time, the period in which plaintiffs claim they are entitled to work authorization would already have passed. The legal issue would be moot."); *Northwest Immigrants Rights Project v. US Citizenship and Immigration Service*, Cv. No. 88-379R (Western District of Washington) (class-wide employment authorization); *League of United Latin American Citizens ("LULAC") v. INS*, vacated other grounds sub nom., *Reno v. Catholic Services, Inc.*, 509 U.S. 43 (1993) (class wide employment authorization); *Proyecto San Pablo v INS*, No. Civ 89-456-TUC-WBD (D. Ariz) (class wide employment authorization); in *B.H., et al. v. United States Citizenship*

*alternative to hunger and homelessness or work in violation of federal law.*

The question of irreparable harm here is hardly a difficult question. Plaintiffs have filed the declarations of numerous experts representing large organizations that assist or represent class members and that uniformly (and without rebuttal by defendants) describing the extreme economic, familial, emotional, and health harms suffered by class members because they are unable to engage in lawful employment and continue living here accumulating unauthorized presence. *See* Dkt. 88, Reply to Opposition to Motion for Preliminary Injunction, pp. 3-7. Plaintiffs have also filed declarations showing how individual class members and their US citizen spouses are suffering terribly. *See, e.g.*, Declaration of Alexander Bustos Garcia, June 11, 2013, Exhibit 56, Dkt. 135-2 at 121; Declaration of Samuel Conlon, June 6, 2013, Exhibit 50, Dkt. 135 at 91; Declaration of Kevin Cathcart, November 23, 2012, Dkt. 89, Ex. 3; Declaration of Todd Fernandez, November 2, 2012, Dkt. 89, Ex. 6; Declaration of Gloria Curiel, November 5, 2012, Dkt. 89, Ex. 11; Declaration of Elissa Barrett, November 5, 2012, Dkt. 89, Ex. 12; Declaration of Gary Manulkin, November 5, 2012, Dkt. 89, Ex. 16; Declaration of Holga Martinez, November 6, 2012, Dkt. 93, Ex. 18; Declaration of Jane DeLeon, November 8, 2012, Dkt. 93, Ex. 19; *see also* Dkt. 125, Exhibits 22-23. If plaintiffs have not by now established class-wide irreparable harm by far more than a preponderance of the evidence, then it seems no amount of evidence will ever be enough to do so.

---

*and Immigration Services, et al.*, No. CV11-2108-RAJ (W.D. Wash.) (employment authorization for asylum applicants).

The public interest now militates in favor of granting temporary injunctive relief without further delay pending the development of plans (whether done unilaterally by defendants or pursuant to settlement or final judgment), to identify class members, address how DOMA-related denials of visa petitions, waiver applications, and applications for adjustment to lawful permanent resident status will be addressed, address how unauthorized presence caused by defendants' implementation of DOMA will be remedied, address how unauthorized employment caused by defendants' implementation of DOMA will be remedied, etc.

*There is no question this is a process that could easily take several months to a year or longer.* There is also no question but that during that time, the public interest would not be better served by immigrant class members not going hungry or working illegally, or being unable to afford legal counsel, or continuing to suffer emotionally and physically, or having their families fall apart.

II    THE DECISIONS IN *A. L. MECHLING BARGE LINES, INC.* AND *PENTHOUSE INT'L, LTD.* PROVIDE NO SUPPORT FOR A FURTHER STAY IN THIS CASE

Defendants cite *A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324 (1961), and *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (DC Cir. 1991), in their Ex Parte Application for a Status Conference, Suspension of Briefing Schedule, Dkt. 136, at 3. Even a superficial reading of these decisions shows that they in no way support an ongoing stay in this case, suspension of briefing, or further delay in granting temporary relief from ongoing irreparable harm, regardless of defendants' claiming they've been "changing" their policies for well over six months now.

In *A. L. Mechling Barge Lines, Inc. v. United States*, the railroads sought relief pursuant to § 4(1) of the Interstate Commerce Act, in order to charge lower carriage rates. The Interstate Commerce Commission issued an order that granted such relief. The barge lines then filed an action in the district court seeking to set aside the Commission's order and to obtain a declaration that the Commission acted beyond its power by granting the tariff relief without holding a hearing, completing an investigation, or setting out findings. The railroads then withdrew their application for the tariff relief, intervened in the lawsuit, and moved for its dismissal on the basis that the action was moot. The district court granted the dismissal.

The barge owners appealed arguing that there was an ongoing "practice of the Commission in granting 'temporary' authority for Fourth Section departures to the Railroads over the protests of the appellants…." *Id*. at 341. However, the barges were under *no such harm at the time*, and with regards potential future harm, the Supreme Court noted that the Commission had already "conceded that it is obliged to make findings … [and] further represent[ed] that it has amended its practice accordingly." *Id*. at 330. Thus, the alleged practice that may have been applied in the future to the barge owners "*continues no longer*." *Id*. at 330-31 (emphasis supplied).

It was only under these unique facts (no present harm and no likely future harm from the alleged actions giving rise to the plaintiffs' claims), that the Supreme Court held the case was moot and sound discretion suggested withholding declaratory judgment where the challenged practice was already "amended" precisely to address plaintiffs' alleged harm and was still "undergoing significant

modification" by the Commission. *Id*.[4]

The facts regarding ongoing harm and changes in Government policy in this case are entirely dissimilar from those present in *A. L. Mechling*. Although the defendants here report that their policy regarding DOMA's application to immigration petitions and applications is undergoing review, since the revisions eradicating plaintiffs' harms have not yet been conclusively adopted and are not even presently in effect, plaintiff's constitutional claims are hardly moot.[5]

The *A. L. Mechling Barge Lines* decision may be relevant to this case if plaintiffs were demanding declaratory judgment even though defendants had *fully implemented actions to ameliorate the range of ongoing harms* suffered by plaintiff, proposed plaintiff intervenors, and members of the certified class caused by defendants' implementation of DOMA (rather than holding these cases in abeyance).

Not only does the decision in *Mechling Barge Lines* not support denying interim relief in this case because defendants claim they are "working on solutions"

---

[4] Nevertheless, the Supreme Court ordered that the District Court decision dismissing the complaint was "modified to provide that the proceedings *are remanded to the Interstate Commerce Commission with direction to vacate and set aside Order 19059*." *Id* at 342.

[5] In *A.L. Mechling*, there was NO ongoing harm to plaintiffs, let alone claimed irreparable harm, when the case was addressed by the Supreme Court. The *status quo* was in effect. The railroads had withdrawn their application for the tariff relief, the Commission had conceded that it is obliged to make findings and that the challenged order in favor of the railroads was ineffective, and the *only* issue remaining was whether a declaratory judgment could be obtained to preserve potential rights the barge operators may have possessed (but had not asserted in the pending case) for "damages." *Id.* at 329.

to address the irreparable harm plaintiff's and class members' are suffering because of defendants' actions, the Supreme Court's decision in fact shows that *even in the highly unlikely event that defendants' eventually fully remedied the harms they have caused and continue to cause, plaintiffs would still be entitled to an order remanding plaintiff's and class members' denials to the agency to be vacated*. *Mechling Barge Lines, Inc.* extends the principle of *United States v. Munsingwear,* 340 U.S. 36, 95 L. Ed. 36, 71 S. Ct. 104 (1950), to "unreviewed administrative orders," *holding* that federal courts should vacate agency orders they decline to review on grounds of mootness. 368 U.S. at 329.[6] If in any way pertinent to this case, *Mechling* stands for the proposition that even if plaintiff's and class members' claims regarding the denials they have been issued both for interim and permanent relief became moot at some point in the future, this Court should still remand for the agency to vacate its previously issued denials.

Reliance on *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (DC Cir. 1991) to continue denying interim relief to injured class members in this case is equally misplaced. In *Penthouse Int'l, Ltd*, Penthouse and Playboy magazines filed an action against the United States Attorney General and members of the Attorney General's Commission on Pornography seeking equitable and monetary relief for alleged

---

[6] Since *Mechling* the Courts have, as a matter of course, vacated agency orders in cases that have become moot by the time of judicial review. *See, e.g., Northwest Pipeline Corp. v. FERC,* 274 U.S. App. D.C. 167, 863 F.2d 73, 79 (D.C. Cir. 1988); *Radiofone,* 759 F.2d at 938; *Hollister Ranch Owners' Ass'n v. FERC,* 245 U.S. App.

violations of the magazine's rights under the First Amendment.[7] The Commission wrote letters to several distributors asking their views on selling Penthouse and Playboy and whether they contained pornography. Penthouse argued that the Commission's letter was an attempt to "chill" the magazine's exercise of its First Amendment rights.

Playboy and Penthouse sought a preliminary injunction against publication of any "blacklist" of corporations which distributed their respective publications and an order withdrawing the Commission's letter. The district court granted partial preliminary relief. *See Playboy Enters. v. Meese*, 639 F. Supp. 581 (D.D.C. 1986).[8]

The two publications persisted in their claims for permanent injunctive and declaratory relief, as well as with a *Bivens* claim for damages. Defendants at that point moved for summary judgment asserting the claims for equitable relief were moot and that the damages claim was barred by the doctrine of good faith or qualified immunity. The magazine claimed that distributors were fearful of prosecution for carrying the magazine. The district court dismissed this argument as

---

D.C. 172, 759 F.2d 898, 901-02 (D.C. Cir. 1985); *Tennessee Gas Pipeline,* 606 F.2d 1373, 1382-83 (D.C. Cir. 1979).

[7] A witness before the Commission asserted that the 7-Eleven national chain of convenience stores was "the leading retailer[]" of *Penthouse* and *Playboy*, which he termed "porn magazines," and predicted that the withdrawal of this major sales outlet would financially "cripple" both magazines. *Id*. at 1013.

[8] The court granted a preliminary injunction, requiring the Commission to send a follow-up letter to the named corporations, withdrawing the first letter and stating that no reply to it would be necessary as the Commission had already decided that no

a mere speculative chance of legal action that was insufficient to keep the controversy live and dismissed.

On appeal, Penthouse did not appeal the district court's holding that its claim for a permanent injunction was moot because Penthouse could not show that it will ever "again be subject to the alleged illegality …" *Id.* at 1018, *quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983).[9] When a litigant "has already received relief for the injury complained of, no live controversy remains." *Id.*[10]

It was solely in the context of whether plaintiff was entitled to declaratory judgment, that the Court of Appeals held that Penthouse's claims that distributors were fearful of prosecution for carrying the magazine was merely "speculative" as there was at best only "a remote chance of legal action" by the Government against the distributors. *Id.* at 1019. It was in this context, that the Court of Appeals said that "[w]here it is so unlikely that the court's grant of declaratory judgment will actually

---

corporations would be named in the final report. The Commission complied. The court refused further injunctive relief.

[9] The district court's issuance of a temporary injunction had "sufficiently responded to the injury for which Penthouse sought equitable relief" as to raise "a real question whether any dispute still remains for the court to adjudicate." *Id.* at 1018.

[10] Of course, in this case, despite class members efforts to be granted interim relief to address their on-going irreparable harm, including but not limited to the inability to be lawfully employed, defendants have for one year refused to grant such relief (though it remains fully available to heterosexual married couples), and this Court has heretofore declined to order interim relief. *The district court in Penthouse Int'l, Ltd. never relied on the Supreme Court's decision in A. L. Mechling Barge Lines, Inc. to deny interim relief.*

- 14 -

relieve the injury, the doctrine of prudential mootness … comes into play. This concept is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power." *Id. citing A.L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331, 7 L. Ed. 2d 317, 82 S. Ct. 337 (1961); *Chamber of Commerce v. United States Dep't of Energy*, 200 U.S. App. D.C. 236, 627 F.2d 289, 291 (D.C. Cir. 1980).

*Indeed, the Court of Appeals' decision in Penthouse makes clear that the instant case raises no prudential concerns concerning defendants' professed commitment to end the harm they've cause*: "In all the cases in which this court, (in line with Supreme Court precedent, *see, e.g., Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 81 L. Ed. 2d 483, 104 S. Ct. 2576 (1984), has found that *the effects of an alleged injury were not eradicated*, some tangible, concrete effect, traceable to the injury, and curable by the relief demanded, clearly remained." *Id.*[11]

The continuing harm of which Penthouse complained fell short of this type of

---

[11] *Citing Reeve Aleutian Airways v. United States*, 281 U.S. App. D.C. 306, 889 F.2d 1139, 1143 (D.C. Cir. 1989) (even though the suspension from participating in Department of Defense contracts had been lifted, it remained on the books as evidencing a violation of air safety standards, causing a drop in the company's business); *American Fed. of Gov't Employees v. Reagan*, 276 U.S. App. D.C. 309, 870 F.2d 723, 726 (D.C. Cir. 1989) (although a newly-issued executive order had superseded the allegedly defective original order, "important collateral consequences flowing from the [original] order" kept the controversy alive); *Doe v. United States Air Force*, 259 U.S. App. D.C. 22, 812 F.2d 738, 740-41 (D.C. Cir. 1987)  (the effect of the government's allegedly illegal search was not completely eradicated because the government retained a copy of the records seized, even though it did not intend to use them, and a declaratory judgment would afford the tangible relief of the return of the disputed documents).

showing. In contrast, the continuing harm of which plaintiff, the intervening plaintiffs and the class complain hardly involve "mere speculati[on]" or a "remote chance" of harm. There is nothing "speculative" or "remote" about plaintiff's, intervening plaintiffs', and certified class members' ongoing inability to work legally and ongoing accumulation of unauthorized presence, all because of the confluence of an unconstitutional statute defendants nevertheless enforced and defendants' obdurate refusal to hold class member petitions and applications in abeyance and grant them the same interim relief granted to all other visa petition beneficiaries pending the outcome of DOMA's constitutionality.

III     CONCLUSION

For the foregoing reasons, defendants request to stay further briefing should be denied.

Dated:  July 11, 2013.                    CENTER FOR HUMAN RIGHTS AND
                                          CONSTITUTIONAL LAW
                                          Peter A. Schey
                                          Carlos R. Holguín

                                          PUBLIC LAW CENTER
                                          A. Christian Abasto

                                          ASIAN LAW ALLIANCE
                                          Beatrice Ann M. Pangilinan

                                          GARY H. MANULKIN
                                          REYNA M. TANNER
                                          Law Offices of Manulkin, Glaser
                                          & Bennett


                                          /s/ Peter A. Schey_____

                                          *Attorneys for Plaintiffs*

- 16 -

Certificate of Service

SACV12-01137 CBM (AJWx)

I hereby certify that on this day I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' EX PARTE APPLICATION FOR A STATUS CONFERENCE, SUSPENSION OF BRIEFING SCHEDULE with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to all attorneys of record through the Court's CM/ECF system.

Dated:  July 11, 2013.                     /s/ Carlos Holguin _____

- 17 -