CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos R. Holguín (Cal. Bar No. 90754)
256 S. Occidental Blvd.
Los Angeles, CA 90057
Telephone: (213) 388-8693 (Schey Ext. 304, Holguín ext. 309)
Facsimile: (213) 386-9484
pschey@centerforhumanrights.org
crholguin@centerforhumanrights.org

*Additional counsel listed next page*
*Attorneys for plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| Jane DELEON,<br><br>          Plaintiff,<br><br>v.<br><br>Janet NAPOLITANO, Secretary of the Department of Homeland Security; Alejandro MAYORKAS, Director, United States Citizenship & Immigration Services; UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES; and DEPARTMENT OF HOMELAND SECURITY,<br><br>          Defendants.<br>_____<br>AEXANDER BUSTOS GARCIA, RICHARD L. FITCH, HOLGA MARTINEZ, MARTHA REYES,<br><br>          Proposed Plaintiffs-in-intervention<br>_____ | SACV12-01137 CBM (AJWx)<br><br>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br><br><br>Hearing: August 19, 2013<br>Time: 10:00 a.m.<br>Hon.  Consuelo B. Marshall<br>Spring St., Courtroom No. 2 |

1
2

*Additional counsel for plaintiff Aranas:*

3
4
5
6
7

PUBLIC LAW CENTER
A. Christian Abasto (Cal. Bar No. 190603)
601 Civic Center Drive West
Santa Ana, CA 92701
Telephone: (714) 541-1010 (Ext. 277)
Facsimile: (714) 541-5157
cabasto@publiclawcenter.org

8
9

*Additional counsel for plaintiff Aranas and for intervening plaintiffs Bustos Garcia and Fitch:*

10
11
12
13

ASIAN LAW ALLIANCE
Beatrice Ann M. Pangilinan (Cal. Bar No. 271064)
184 Jackson Street, San Jose, CA 95112
Telephone: (408) 287-9710
Facsimile: (408) 287-0864
Email: bpangilinan@asianlawalliance.org

14
15

*Additional counsel for plaintiffs DeLeon and for intervening plaintiffs Martinez and Reyes:*

16
17
18
19
20
21

LAW OFFICES OF MANULKIN & BENNETT
Gary H. Manulkin (Cal. Bar No. 41469)
Reyna M. Tanner (Cal. Bar No. 197931)
10175 Slater Avenue, Suite 111
Fountain Valley, CA 92708
Telephone: 714-963-8951
Facsimile: 714-968-4948
gmanulkin@mgblaw.com
reynatanner@yahoo.com

22

/ / /

23
24
25
26
27
28

Plaintiff's motion for summary judgment

- 2 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

To defendants and their attorneys of record:

PLEASE TAKE NOTICE that on August 19, 2013, at 10:00 a.m., or as soon thereafter as counsel may be heard, pursuant to Rule 56(a), Federal Rules of Civil Procedure, plaintiff and proposed plaintiff intervenors will and do hereby move the Court for the entry of final judgment that the Defense of Marriage Act § 3, as applied by defendants to plaintiff, the proposed plaintiff intervenors, and members of the certified class violated the due process and equal protection guarantees of the Fifth Amendment of the United States Constitution.

This motion is made following conferences of counsel pursuant to Local Rule 7-3 which took place on July 2, 2013.

This motion is based upon the accompanying memorandum of law and upon all other matters of record herein. Proposed findings of fact and conclusions of law are lodged concurrently herewith.

/ / /

Plaintiff's motion for summary judgment

- 3 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  July 19, 2013.

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Peter A. Schey
Carlos R. Holguín

PUBLIC LAW CENTER
A. Christian Abasto

ASIAN LAW ALLIANCE
Beatrice Ann M. Pangilinan

GARY H. MANULKIN
REYNA M. TANNER
Law Offices of Manulkin, Glaser
& Bennett

/s/ Peter A. Schey _____

/s/ Carlos R. Holguín _____

*Attorneys for Plaintiffs*

Plaintiff's motion for summary judgment

- 4 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388.8693

Certificate of Service

SACV12-01137 CBM (AJWx)

I hereby certify that on this day I electronically filed the foregoing NOTICE OF

MOTION AND MOTION FOR SUMMARY JUDGMENT with the Clerk of Court by using

the CM/ECF system, which provided an electronic notice and electronic link of the

same to all attorneys of record through the Court's CM/ECF system.

Dated:  July 19, 2013.                          /s/ Peter Schey

/ / /

Plaintiff's motion for summary judgment

- 5 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos R. Holguín (Cal. Bar No. 90754)
256 S. Occidental Blvd.
Los Angeles, CA 90057
Telephone: (213) 388-8693 (Schey Ext. 304, Holguín ext. 309)
Facsimile: (213) 386-9484
pschey@centerforhumanrights.org
crholguin@centerforhumanrights.org

*Additional counsel listed next page*
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| Jane DELEON, <br><br> Plaintiff, <br><br> v. <br><br> Janet NAPOLITANO, Secretary of the Department of Homeland Security; Alejandro MAYORKAS, Director, United States Citizenship & Immigration Services; UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES; and DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. <br> _____ <br> AEXANDER BUSTOS GARCIA, RICHARD L. FITCH, HOLGA MARTINEZ, MARTHA REYES, <br><br> Proposed Plaintiffs-in-intervention <br> _____ | SACV12-01137 CBM (AJWx) <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT. <br><br><br><br><br> Hearing: August 19, 2013 <br> Time: 10:00 a.m. <br> Hon. Consuelo B. Marshall <br> Spring St., Courtroom No. 2 |

1
2

*Additional counsel for plaintiff Aranas:*

3    PUBLIC LAW CENTER
     A.  Christian Abasto (Cal. Bar No. 190603)
4    601 Civic Center Drive West
     Santa Ana, CA 92701
5    Telephone: (714) 541-1010 (Ext. 277)
6    Facsimile: (714) 541-5157
     cabasto@publiclawcenter.org
7

8    *Additional counsel for plaintiff Aranas and for intervening plaintiffs Bustos Garcia and Fitch:*

9
     ASIAN LAW ALLIANCE
10   Beatrice Ann M. Pangilinan (Cal. Bar No. 271064)
11   184 Jackson Street, San Jose, CA 95112
     Telephone: (408) 287-9710
12   Facsimile: (408) 287-0864
     Email:  bpangilinan@asianlawalliance.org
13

14   *Additional counsel for plaintiffs DeLeon and for intervening plaintiffs Martinez and Reyes:*
15

16   LAW OFFICES OF MANULKIN & BENNETT
     Gary H. Manulkin (Cal. Bar No. 41469)
17   Reyna M. Tanner (Cal. Bar No. 197931)
18   10175 Slater Avenue, Suite 111
     Fountain Valley, CA 92708
19   Telephone: 714-963-8951
20   Facsimile: 714-968-4948
     gmanulkin@mgblaw.com
21   reynatanner@yahoo.com

22   */ / /*
23
24
25
26
27
28

1
2

## TABLE OF CONTENTS

3  I      Introduction ................................................................................................ 1

4  II    *Windsor* makes clear that Plaintiff and the proposed Plaintiff
   Intervenors are entitled to Summary Judgment................................... 4

5
6  VI    Conclusion ............................................................................................. 9

7
8

## TABLE OF AUTHORITIES

9

### Cases

10  *Bolling* v. *Sharpe*, 347 U. S. 497 (1954) ................................................. 9

11  *Louisville Gas & Elec. Co.* v. *Coleman*, 277 U. S. 32, 37–38 (1928) ........................ 7

12  *Romer* v. *Evans*, 517 U. S. 620, 633 (1996) .......................................... 7

13  *United States v. Windsor*, __U.S. __; 2013 U.S. LEXIS 4921, 2013 WL 3196928

14      (June 26, 2013) ..................................................................................... 4

15  *Williams* v. *North Carolina*, 317 U. S. 287, 298 (1942)............................................. 5

16
17

### Other Authorities

18  1 U.S.C. §7................................................................................... passim

19  8 U.S.C. §§ 1101, *et seq* .............................................................................. 1

20  28 U. S. C. §530D.......................................................................................... 5

21  U.S. Const., Fifth Amendment .............................................................. passim

22  Rule 23(b)(2), Fed.R.Civ.Proc.................................................................... 1

23  GAO, D. Shah, Defense of Marriage Act: Update to Prior Report 1 (GAO–04–353R,

24      2004) ..................................................................................................... 5

25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

MOTION FOR SUMMARY JUDGMENT

I      INTRODUCTION

Plaintiff Jane DeLeon ("Plaintiff" or "DeLeon") challenges the constitutionality of Section 3 of the Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7, as applied to preclude her from receiving certain immigration benefits that are available to immigrants in heterosexual marriages. DeLeon seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. R. 57 as well as review of agency action pursuant to 5 U.S.C. §§ 701-706. (Complaint ("Compl.") at ¶ 4, Docket No. 1.)This is an action for declaratory and injunctive relief challenging defendants' applying § 3 of the Defense of Marriage Act, 1 U.S.C. § 7 (DOMA),[1] to deny immigrant members of lawfully married same-sex couples marriage-based benefits under the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.* (INA).

By order dated April 19, 2013 (Dkt. 126), this Court held that "DOMA § 3 is not rationally related to Congress' interest in a uniform federal definition of marriage … does not 'ensur[e] that similarly situated couples will be eligible for the same

--------

[1] DOMA § 3 provides:

> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between

federal marital status regardless of the state in which they live' … and that Plaintiffs have stated a claim that DOMA § 3 violates their equal protection rights." *Id*. at 14.

The Court certified this action pursuant to Rule 23(b)(2), Fed.R.Civ.Proc., on behalf of the following class:

> All members of lawful same-sex marriages who have been denied or will be denied lawful status or related benefits under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq*., by the Department of Homeland Security solely due to § 3 by the Defense of Marriage Act, 1 U.S.C. § 7.

Order Granting Provisional Class Certification, Dkt. 127, at 12.

On April 24, 2013, the Court stayed further proceedings in this action pending the ruling of the United States Supreme Court in *United States v. Windsor*, No. 12-307, on the ground that the Supreme Court's ruling "will simplify the issues before this Court." Dkt. 129 at 2.

The Court denied a class wide preliminary injunction. The Court mistakenly found that:

> [s]ince [defendants issued their] October 5, 2012 amendment to the Morton memoranda], immigrants in same-sex marriages may qualify for deferred action status, which includes the temporary work authorization and tolling of unlawful presence accrual that Plaintiff DeLeon seeks by this Motion. *Indeed, none of the adverse immigration decisions provided by DeLeon post-date the*

---

one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife.

*October 5, 2012 amendment to the Morton Memo*.

Dkt. 128, Order Denying Preliminary Injunction, *supra*, at 8 (docket references omitted) (emphasis added). As the Court is now aware, the Morton Memorandum and its October 5, 2012 supplement address only the exercise of prosecutorial discretion to stay removal proceedings or execution of orders of removal of certain immigrants, and *have nothing to do with eligibility for deferred action or employment authorization*.

On April 26, 2013, defendants filed a notice correcting the factual findings underlying the Court's having denied preliminary injunctive relief. Therein, defendants made clear that—

1)   "USCIS has, in fact, denied I-130 Petitions for Alien Relative since October 5, 2012, based on" DOMA § 3, Dkt. 131 at 2;

2)   CIS "will continue to [issue such denials] until there is a definitive ruling" striking down DOMA § 3, *id* at 3; and

3)   defendants grant class members "deferred action" and employment authorization "only in *extraordinary circumstances*…"

Dkt. 131 at 4 (emphasis added).[2]

_____

[2] Defendants further clarified that their prosecutorial discretion memos address *only* whether DHS immigration enforcement agencies, typically ICE, will proceed against a class member in removal or deportation proceedings. *See* Dkt. 131 at 3-4 and n.3 ("USCIS [the agency that denied petitions based on DOMA] therefore does *not* exercise prosecutorial discretion pursuant to the Morton memo." (Emphasis supplied)).

Defendants now admit having made numerous "adverse immigration decisions affecting those in the plaintiff class [before and] after October 5, 2012." *See* Dkt. 131; *see also* Dkt. 135, Plaintiffs' Exhibits 37-41 (post-October 5, 2012, denials of multiple class members' immigration applications). Defendants also now admit that neither their prosecutorial discretion memos nor the unlikely possibility of getting deferred action afforded class members whose applications for pre-adjudication employment authorization and for adjustment of status CIS unconstitutionally denied any real protection from joblessness or inadmissibility.

On June 26, 2013, the Supreme Court held that DOMA § denies due process and equal protection in violation of the Fifth Amendment to the U.S. Constitution. *United States v. Windsor*, U.S. ; 2013 U.S. LEXIS 4921, 2013 WL 3196928 (June 26, 2013).

Plaintiff class representative DeLeon and the proposed intervening plaintiffs accordingly now move the Court to enter summary judgment in this case.

II    *WINDSOR* MAKES CLEAR THAT PLAINTIFF AND THE PROPOSED PLAINTIFF
       INTERVENORS ARE ENTITLED TO SUMMARY JUDGMENT.

Section 3 of DOMA provides as follows:

In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between

one man and one woman as husband and wife, and the word 'spouse' refers

only to a person of the opposite sex who is a husband or a wife.

1 U.S.C. §7.

The definitional provision does not by its terms forbid States from enacting

laws permitting same-sex marriages or civil unions or providing state benefits to

residents in that status. The enactment's comprehensive definition of marriage for

purposes of all federal statutes and other regulations or directives covered by its

terms, however, does control over 1,000 federal laws in which marital or spousal

status is addressed as a matter of federal law, including the Immigration and

Nationality Act. *See* GAO, D. Shah, Defense of Marriage Act: Update to Prior

Report 1 (GAO–04–353R, 2004).

On February 23, 2011, the Attorney General of the United States notified the

Speaker of the House of Representatives, pursuant to 28 U. S. C. §530D, that the

Department of Justice would no longer defend the constitutionality of DOMA's §3.

Noting that "the Department has previously defended DOMA against . . . challenges

involving legally married same-sex couples," the Attorney General informed

Congress that "the President has concluded that given a number of factors, including

a documented history of discrimination, classifications based on sexual orientation

should be subject to a heightened standard of scrutiny." *See Windsor*, Slip Op. at 3-4.

Although "the President . . . instructed the Department not to defend the

statute in *Windsor*," he also decided "that Section 3 will continue to be enforced by

the Executive Branch …" *Id*. at 4.

In response to the notice from the Attorney General, the Bipartisan Legal Advisory Group (BLAG) of the House of Representatives voted to intervene in litigation challenging DOMA to defend its constitutionality. *Id*. The Department of Justice did not oppose limited intervention by BLAG in *Windsor* or in this case.

The recognition of civil marriages is central to state domestic relations law applicable to its residents and citizens. *Windsor*, Slip Op. at 17, *citing Williams* v. *North Carolina*, 317 U. S. 287, 298 (1942) ("Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders"). The definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the "[p]rotection of offspring, property interests, and the enforcement of marital responsibilities." *Id*. *quoting Williams* v. *North Carolina*, 317 U. S. at 298.

Consistent with this allocation of authority, "the Federal Government, through our history, has deferred to state-law policy decisions with respect to domestic relations." *Id*.

DOMA "rejects the long-established precept that the incidents, benefits, and obligations of marriage are uniform for all married couples within each State, though they may vary, subject to constitutional guarantees, from one State to the next." *Id*. at 18.

Despite these considerations, the Supreme Court held in *Windsor* that it was unnecessary to decide whether this federal intrusion on state power was a violation of the Constitution because the State's power in defining the marital relation is of

central relevance in this case quite apart from principles of federalism. *Id*.

The State's decision to give this class of persons the right to marry "conferred upon them a dignity and status of immense import." *Id*.  When the State used its historic and essential authority to define the marital relation in this way, its role and its power in making the decision enhanced the recognition, dignity, and protection of the class in their own community. *Id*.

DOMA, because of its reach and extent, departs from this history and tradition of reliance on state law to define marriage. *Id*. at 18-19. "'[D]iscriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision.'" *Id*. at 19, *quoting Romer* v. *Evans*, 517 U. S. 620, 633 (1996) (*quoting Louisville Gas & Elec. Co.* v. *Coleman*, 277 U. S. 32, 37–38 (1928)).

DOMA § 3 uses this state-defined class for the opposite purpose—"to impose restrictions and disabilities." *Id*. at 19.  That result required the Supreme Court to address whether the resulting injury and indignity is a deprivation of an essential part of the liberty protected by the Fifth Amendment. *Id*.

DOMA "seeks to injure" the very classes certain states sought to protect when they legalized same sex marriages. *Id*. at 20. The Constitution's guarantee of equality "must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot" justify disparate treatment of that group. *Id*. quoting *Department of Agriculture* v. *Moreno*, 413 U. S. 528, 534–535 (1973). The history of DOMA's enactment and its own text demonstrate that interference with the equal

1  dignity of same-sex marriages, a dignity conferred by the States in the exercise of

2  their sovereign power, was more than an incidental effect of the federal statute. *Id.* at

3

4  21. "It was its essence." *Id.*[3]

5      The principal effect of Defendants' implementation of DOMA, even after

6  defendants decided it was unconstitutional and were told so by numerous courts, was

7
   "to identify a subset of state-sanctioned marriages and make them unequal" for
8

9  purposes of benefits otherwise available under the Immigration and Nationality Act.

10 *Id.* at 22.

11     By creating two contradictory marriage regimes within the same States,

12 DOMA forced same-sex couples to live as married for the purpose of state law "but

13
14 unmarried for the purpose of federal law, thus diminishing the stability and

15 predictability of basic personal relations [certain] State[s] [have] found it proper to

16
17 acknowledge and protect." *Id.*

18     As the record in this case makes clear, defendants' application of DOMA and

19 refusal to hold these cases in abeyance has, as it did in *Windsor*, "place[d] same-sex

20
21 couples in an unstable position of being in a second-tier marriage." *Id.* at 23.

22     The declarations on file in this case fully confirm the Supreme Court's

23 observation that "[u]nder DOMA, same-sex married couples have their lives

24 burdened, by reason of government decree, in visible and public ways." *Id.* at 23.

25

26 _____

27 [3] For a detailed discussion of DOMA's legislative history, *see* Plaintiffs' Opposition
   to Defendant-Intervenor's Motion to Dismiss, Dkt. 71, at pp. 18-24.
28

The power the Constitution grants it also restrains. "[T]hough Congress has great authority to design laws to fit its own conception of sound national policy, it cannot deny the liberty protected by the Due Process Clause of the Fifth Amendment." *Id*. at 25.

DOMA is invalid "for no legitimate purpose overcomes the purpose and effect to disparage and to injure those whom the State, by its marriage laws, sought to protect in personhood and dignity." *Id*. 25-26.

By seeking to displace this protection and treating those persons as living in marriages less respected than others, "[DOMA] violates basic due process and equal protection principles applicable to the Federal Government." *Id*. at 20 (emphasis added), *citing* U.S. Const., Fifth Amendment; *Bolling* v. *Sharpe*, 347 U. S. 497 (1954) (emphasis added),

VI   CONCLUSION

For the foregoing reasons, plaintiff and proposed plaintiff intervenors respectfully move for the entry of summary judgment.

Dated: July 19, 2013.                    CENTER FOR HUMAN RIGHTS AND
                                         CONSTITUTIONAL LAW
                                         Peter A. Schey
                                         Carlos R. Holguín

                                         PUBLIC LAW CENTER
                                         A. Christian Abasto

                                         ASIAN LAW ALLIANCE
                                         Beatrice Ann M. Pangilinan

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF MANULKIN & BENNETT
Gary H. Manulkin
Reyna M. Tanner

/s/ Peter A. Schey_____

/s/ Carlos R. Holguín_____

*Attorneys for plaintiffs*

CERTIFICATE OF SERVICE

SACV12-01137 CBM (AJWx)

I hereby certify that on this day I electronically filed the foregoing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR

SUMMARY JUDGMENT with the Clerk of Court by using the CM/ECF system, which

provided an electronic notice and electronic link of the same to all attorneys of

record through the Court's CM/ECF system.

Dated:  July 19, 2013.                    /s/ Peter Schey

/ / /