STUART F. DELERY
Acting Assistant Attorney General
AUGUST E. FLENTJE
Senior Counsel for Immigration
DAVID J. KLINE
Director, Office of Immigration Litigation
District Court Section
JEFFREY S. ROBINS
Assistant Director
AARON S. GOLDSMITH (VSB No. 45405)
Senior Litigation Counsel
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 532-4107
Facsimile: (202) 305-7000
Email: aaron.goldsmith@usdoj.gov
TIMOTHY M. BELSAN
Trial Attorney

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN ARANAS, et al., | No. 8:12-cv-1137-CBM (AJWx) |
| Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY STAY AND RECONSIDER MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| JANET NAPOLITANO, Secretary, Department of Homeland Security, et al., | |
| Defendants. | Hearing: August 19, 2013<br>Time: 10:00 a.m.<br>Judge: Hon. Consuelo Marshall |

1

Since this action was commenced on July 12, 2012, the Supreme Court has held that Section 3 of the Defense of Marriage Act ("DOMA") is unconstitutional. *See United States v. Windsor*, 133 S. Ct. 2675 (2013). Not only is the Executive Branch no longer applying Section 3 of DOMA, it is working expeditiously to implement the *Windsor* decision across the federal government.

As a result, the Defendants are already providing the relief sought by Plaintiffs in this action. Specifically, the Department of Homeland Security ("DHS") is evaluating all immigration petitions and applications, including I-485 applications for adjustment of status, without regard to Section 3 of DOMA. *See* http://www.dhs.gov/topic/implementation-supreme-court-ruling-defense-marriage-act; *see also In re Zeleniak*, 26 I. & N. Dec. 158, 159 (B.I.A. 2013) (holding that Section 3 of DOMA is no longer an impediment to the recognition of lawful same-sex marriages if the marriage is valid under the laws of the State of celebration). Additionally, DHS recently announced that it is reopening prior applications that were denied solely on the basis of Section 3 of DOMA, without charging a fee to applicants. *See* "Same-Sex Marriages- Frequently Asked Questions" (cited hereafter as "Guidance Regarding Reopening") pp. 1-2, *available at* http://www.uscis.gov/portal/site/uscis/menuitem.eb1d4c2a3e5b9ac89243c6a7543f6d1a/?vgnextoid=2543215c310af310VgnVCM100000082ca60aRCRD&vgnextchannel=2543215c310af310VgnVCM100000082ca60aRCRD.[1] If an applicant's work authorization was denied or revoked based upon the denial of the I-485 application, the denial or revocation will be "concurrently reconsidered, and a new Employment Authorization Document issued, to the extent necessary." *See id.* The decision to reopen petitions and applications that were denied solely based on

---

[1] On July 26, 2013, Defendants' counsel attempted to confer, by telephone and email, with Plaintiffs' counsel regarding this new procedure but did not receive a response from Plaintiffs' counsel prior to this filing.

Section 3 of DOMA effectively remedies any accrual of unlawful presence under 8 U.S.C. § 1182(a)(9)(B)(i) resulting directly from the denial of the petition or application based solely on Section 3 of DOMA. As a result, this Court need not grant any of Plaintiffs' motions, as the relief sought is already being provided by Defendants.

Plaintiffs filed this suit primarily to obtain interim relief pending the Supreme Court's resolution of the constitutionality of Section 3 of DOMA. This Court denied that request for preliminary relief, and the Supreme Court has now held Section 3 of DOMA unconstitutional. There is no reason to reconsider the grant of preliminary relief given that Section 3 of DOMA is no longer being applied. Considering this request for preliminary relief is particularly unneeded now that Plaintiffs have subsequently moved for summary judgment and a permanent injunction.

On April 19, 2013, this Court denied Plaintiffs' request for a preliminary injunction because Plaintiffs failed to show that same-sex couples would suffer future irreparable harm in the absence of a preliminary injunction. *See* Dkt. 128, pp. 7-8 ("While DeLeon and the plaintiff class have undeniably been harmed by the potentially unconstitutional application of DOMA § 3 to their immigration petitions, it is less clear whether any members of the plaintiff class are likely to suffer irreparable injury *pendente lite*."). Now, after the Supreme Court has declared Section 3 of DOMA unconstitutional and the Executive Branch has stopped enforcing that statutory provision, Plaintiffs seek reconsideration of this Court's April 19 order denying their Motion for Preliminary Injunction. *See* Dkt. 132. Specifically, Plaintiffs seek an injunction: (i) restraining Defendants from deeming class members' presence in the United States unauthorized for purposes of 8 U.S.C. § 1182(a)(9)(B) pending reopening and adjudication of their applications and petitions, and, for the first time (ii) an order vacating the denials

of Plaintiffs' employment authorization and "granting such applications pending reopening." *Id.*, p. 3.[2]

Given recent events, this Court's action on Plaintiffs' renewed motion for a preliminary injunction is no longer necessary for several reasons.

First, in light of the *Windsor* decision, Plaintiffs' claims are moot.

Second, Plaintiffs have now moved for summary judgment and permanent injunctive relief – and scheduled that motion for a hearing on the same date as their request for preliminary relief – making it unnecessary for this Court to consider their earlier-filed request for preliminary relief. *See*, *e.g.*, *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 956 n.1 (9th Cir. 2012) ("Because we now rule on the merits of the case, deciding the preliminary injunction appeal would have no practical consequences."); *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093 (9th Cir. 2010) ("A preliminary injunction . . . dissolves *ipso facto* when a final judgment is entered in the cause."); *Sec. & Exch. Comm. v. Mt. Vernon Mem'l Park*, 664 F.2d 1358, 1361 (9th Cir. 1982) (dismissing appeal of preliminary injunction).

Third, Plaintiffs cannot demonstrate *future* irreparable harm in the absence of a preliminary injunction because the Executive Branch is no longer applying Section 3 of DOMA. *See Zeleniak*, 26 I. & N. Dec. at 159. Moreover, as DHS recently announced, the agency is reopening applications and petitions that were previously denied based on Section 3 of DOMA. *See* Guidance Regarding Reopening, p. 1. Reopening all of these applications and petitions cures any

---

[2] To be clear, there are individuals in same-sex marriages who have filed actions in other federal district courts seeking retrospective relief with respect to denials of immigration benefits based on Section 3 of DOMA. This Court has previously provided notice to the plaintiffs in one such action, *Blesch v. Holder*, No. 12-cv-1578 (E.D.N.Y.), that was filed before this action was commenced. *See* Dkt. 111.

injuries suffered by class members. *Id.* That action eliminates any need for preliminary relief.

Fourth, an order granting work authorization is unwarranted because it is outside the scope of the relief sought in this suit or addressed in this Court's preliminary injunction ruling, and it is unnecessary because DHS is currently reopening denied applications for adjustment of status and either acting on them "immediately" or "immediately" processing any related application for employment authorization. *See* Guidance Regarding Reopening, p. 1.

Fifth, there is no basis for enjoining DHS with respect to the accrual of unlawful presence because DHS's decision to reopen denied petitions and applications effectively remedies prior accrual of unlawful presence for purposes of 8 U.S.C. § 1182(a)(9)(B)(i) resulting directly from the denial of the petition or application based on Section 3 of DOMA and renders this claim moot.

Sixth, to the extent that there are any issues remaining as to how to unwind Section 3 of DOMA, this Court should decline to exercise judicial authority over these issues for the prudential reasons that this Court has previously recognized. *See* Dkt. 128, p. 7.

For these reasons, as more fully set forth below, this Court should deny Plaintiffs' request for reconsideration of the denial of their motion for preliminary injunction.

## Argument

**1. This action is moot and should be dismissed for lack of jurisdiction.**

As more fully set forth in Defendants' Opposition to Plaintiffs' Motion for Summary Judgment that is being filed contemporaneously, Plaintiffs' claims are moot and, as a result, this action should be dismissed for lack of subject matter jurisdiction. Because this Court lacks jurisdiction, there is no reason to address Plaintiffs' Motion for Reconsideration.

5

## 2. There is no need to reconsider a preliminary injunction in light of Plaintiffs' pending motion for summary judgment.

A preliminary injunction would have no "practical consequences" given Plaintiffs' motion for summary judgment on the merits, which is currently before this Court. *See, e.g.*, *Dex Media West*, 696 F.3d at 956 n.1 (dismissing appeal of preliminary injunction as moot); *see generally*, *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) ("A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment"). There is simply no reason for this Court to even reconsider Plaintiffs' motion for preliminary injunction at this time. Instead, this Court should expend its resources resolving Plaintiffs' motion for summary judgment. To that end, Defendants agree that there are no factual issues in dispute and that this case is ripe for disposition on the merits.

Moreover, the Supreme Court has already decided, on the merits, the ultimate question in this action – whether Section 3 of DOMA is constitutional. *See Windsor*, 133 S. Ct. 2675. As a result, there is no need to preserve the relative positions of the parties pending a judicial resolution of the constitutionality of Section 3 of DOMA. *See Sierra On-Line*, 739 F.2d at 1422.

## 3. Plaintiffs cannot establish future irreparable injury because the Executive Branch is no longer enforcing Section 3 of DOMA.

On April 19, 2013, this Court denied Plaintiffs' motion for a preliminary injunction on the grounds that they failed to meet their burden of establishing future irreparable harm.[3] *See* Dkt. 128, pp. 7-8. This Court explained that a

---

[3] Plaintiffs waited over two months from the April 19, 2013 decision until July 8, 2013 to seek reconsideration. Dkt. 132. This delay further undercuts any argument that they will suffer *immediate* irreparable harm without a preliminary

6

preliminary injunction is unnecessary where no *new* harm is imminent. *See* Dkt. 128, p. 7, citing *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Here, there can be no new harm because the Supreme Court has already found Section 3 of DOMA unconstitutional and, as a result, the Executive Branch is not enforcing it. *See Zeleniak*, 26 I. & N. Dec. at 159.

The bulk of Plaintiffs' Motion for Reconsideration challenges the adequacy of the administrative remedy of deferred action. *See* Dkt. 132-1, pp. 6, 9-17, 19-20. This issue is now moot. Because Section 3 of DOMA is no longer being enforced, there is no longer any need for same-sex couples to seek deferred action. *See Zeleniak*, 26 I. & N. Dec. at 159. The question of whether deferred action was an adequate administrative remedy prior to the *Windsor* decision is simply not a live case or controversy.

**4.   Plaintiffs' are not entitled to a preliminary injunction with respect to employment authorization, especially because DHS is currently granting, without a court order, work authorization to applicants whose applications were denied solely based on Section 3 of DOMA.**

As a threshold matter, a litigant is not permitted to use a motion for preliminary injunction to seek a form of relief that is outside the scope of the complaint. *See generally, De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (finding that the preliminary injunction at issue was not of the "same character" as the final relief sought and dealt "with a matter wholly outside the issues in the suit"); *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues

---

injunction. This delay cannot be attributed to the Notice provided by DHS on April 26, 2013, more than two months before Plaintiffs sought reconsideration. *See* Dkt. 131.

7

in the suit."). Because Plaintiffs' Complaint does not seek an order compelling DHS to vacate prior denials or compel DHS to grant employment authorization, such a claim is outside the scope of this suit. *See* Dkt. 1, pp. 29-30 ("Prayer for Relief," in which Plaintiffs only sought prospective relief including specifically a temporary injunction enjoining Defendants from "*revoking* or *denying* employment authorization to plaintiffs DeLeon and Ara[a]nas and those similarly situated" (emphasis added)).

Similarly, a litigant is not entitled to seek new relief through a motion for reconsideration. *See* L.R. 7-18 (stating the bases for a motion for reconsideration). Because Plaintiffs are improperly using a motion for reconsideration to seek a new form of relief with respect to employment authorization that was not sought in their initial motion,[4] their motion should be denied.

More importantly, DHS recently announced that if an applicant's work authorization was denied or revoked based solely on Section 3 of DOMA, the denial or revocation will be "concurrently reconsidered, and a new Employment Authorization Document issued, to the extent necessary." *See* Guidance Regarding Reopening, p. 1. And if a decision cannot be rendered immediately on a reopened adjustment of status application, DHS will either "(1) immediately process any pending application for employment authorization or (2) reopen and approve any previously denied or revoked application for employment authorization." *See id.* Thus, applicants will receive employment authorization "immediately" without the need of a court order. Since this new policy for issuing work authorization in

---

[4] The relief sought in Plaintiffs' initial Motion for Preliminary Injunction was summarized by this Court as an order enjoining Defendants from "*denying* employment authorization to plaintiffs DeLeon, Ara[a]nas and unnamed members of the plaintiff class." Dkt. 128, p. 3 (emphasis added); *see also* Dkt. 12, p. 3 (seeking prospective relief only with respect to employment authorization).

8

previously denied cases was issued just last week, to the extent that the Court wishes to retain jurisdiction over this case, the government can provide the Court a status report on its implementation prior to this Court's hearing scheduled for August 19, 2013.

**5.  Plaintiffs are not entitled to a preliminary injunction with respect to the accrual of unlawful presence, especially because DHS's decision to reopen previously denied applications remedies any accrual of unlawful presence.**

Section 1182(a)(9)(B)(i) potentially[5] renders inadmissible for either three or ten years certain aliens who have accrued more than 180 days of "unlawful presence" in the United States and subsequently depart from the United States.  *See* 8 U.S.C. § 1182(a)(9)(B)(i); *see In re Rodarte-Roman*, 23 I. & N. Dec. 905, 906 (B.I.A. 2006) (bar on re-entry is not triggered until alien departs).  The filing of an I-130 has no effect on the accrual of unlawful presence; instead, it is the existence of a pending I-485 adjustment of status application that halts the accrual of unlawful presence.  Under long-standing DHS policy, no alien, regardless of his or her actual immigration status, accrues unlawful presence while he or she has pending a properly filed I-485 application for adjustment of status.  U.S. Citizenship and Immigration Services Interoffice Memorandum, dated May 6, 2009, from Donald Neufeld to Field Leadership (hereafter cited as "Neufeld Memorandum") p. 3, *available at* http://www.uscis.gov/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009/revision_redesign_AFM.PDF.  If a motion to reopen is granted, the proceeding, by

---

[5] DHS has the discretion to waive these bars on re-entry under certain circumstances.  *See* 8 U.S.C. § 1182(a)(9)(B)(v); *see also* 8 C.F.R. § 212.7(a), (e).  In addition, although a motion to reopen or reconsider the denial by an alien would not normally stop the accrual of unlawful presence, U.S. Citizenship and Immigration Services "[may] direct[] otherwise."  *See* 8 C.F.R. § 103.5(a)(1)(iv).

9

definition, is reopened. *See* 8 U.S.C. § 103.5(a)(4) ("Where a motion to reopen is granted, the proceeding shall be reopened."). Thus, once DHS reopens an I-485 application, the I-485 application will be deemed to be pending. In turn, that person, because the I-485 application is pending, is protected from accrual of unlawful presence from the original date the I-485 application was properly filed until there is a final decision denying it. Neufeld Memorandum, p. 34. Thus, reopening an I-485 application will, in effect, "erase" any unlawful presence that may have accrued between the date of the original denial and the date of reopening. If DHS grants an alien's I-485 application for adjustment of status, the applicant, of course, will be an alien lawfully admitted for permanent residence, and the unlawful presence bars no longer apply. *See* 8 U.S.C. § 1182(a)(9)(B)(i) (excluding from its scope "an alien lawfully admitted for permanent residence"). And even if DHS again denies the Form I-485, unlawful presence will begin to accrue only once the denial becomes final. Neufeld Memorandum, p. 34. In particular, if the applicant is able to renew the application in immigration court, the applicant will continue to be protected against accrual of unlawful presence until there is a final administrative decision denying the I-485 application. *Id*. Neufeld Memorandum, p. 3.

Thus, there is no need for this Court to grant retroactive relief with respect to unlawful presence because DHS is already granting such relief without a court order.

**6. Even if there were outstanding issues regarding how the Executive Branch should implement the *Windsor* decision in discrete situations, this Court should decline to exercise jurisdiction over these issues for prudential reasons.**

As this Court previously observed, the doctrine of prudential mootness urges the Judiciary to decline the exercise of its authority when co-equal branches of

government are actively changing a challenged practice. Dkt. 128, p. 7, (citing, *inter alia*, *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991)). The doctrine comes from the Supreme Court's decision in *A.L. Mechling Barge Lines, Inc. v. United States*, in which the Supreme Court declined to adjudicate the case because "[t]he Commission . . . represents that it has amended its practice accordingly. It thus appears that one of the 'continuing' practices whose validity appellants would have us adjudicate continues no longer." Dkt. 128, p. 7 (citing 368 U.S. 324, 330-31 (1961)).

Here, Section 3 of DOMA has already been ruled unconstitutional by the Supreme Court. *See Windsor*, 133 S. Ct. 2675. As a result, the challenged practice – the enforcement of Section 3 of DOMA – has ceased. DHS has taken significant steps in changing its immigration-related procedures in light of the *Windsor* decision, including steps that resolve all of the claims raised by Plaintiffs here. *See* http://www.dhs.gov/topic/implementation-supreme-court-ruling-defense-marriage-act; *Zeleniak*, 26 I. & N. Dec. at 159. For this additional reason, this Court should decline to order injunctive relief at this time. *See generally*, *Li v. Kerry*, 710 F.3d 995, 1004 (9th Cir. 2013) (explaining in the context of an action under the Administrative Procedure Act that courts "have no authority to compel agency action merely because the agency is not doing something we may think it should do").

## Conclusion

WHEREFORE, this Court should deny Plaintiffs' Motion for Reconsideration.

11

Dated: July 29, 2013

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

AUGUST E. FLENTJE
Senior Counsel for Immigration

DAVID J. KLINE
Director, Office of Immigration Litigation

JEFFREY S. ROBINS
Assistant Director

<u>s/ Aaron S. Goldsmith</u>
AARON S. GOLDSMITH
Senior Litigation Counsel
District Court Section
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

*Attorneys for Defendants*