CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos R. Holguín (Cal. Bar No. 90754)
256 S. Occidental Blvd.
Los Angeles, CA 90057
Telephone: (213) 388-8693 (Schey Ext. 304, Holguín ext. 309)
Facsimile: (213) 386-9484
pschey@centerforhumanrights.org
crholguin@centerforhumanrights.org

*Additional counsel listed next page*

*Attorneys for plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MARTIN R. ARANAS, *et al.,* | SACV12-01137 CBM (AJWx) |
| Plaintiffs, | PLAINTIFFS' EXHIBITS 62-66. |
| -vs- | |
| JANET NAPOLITANO, Secretary of the Department of Homeland Security; *et al.,* | |
| Defendants. | |

*/ / /*

*Additional counsel for plaintiff Aranas:*

PUBLIC LAW CENTER
A.  Christian Abasto (Cal. Bar No. 190603)
601 Civic Center Drive West
Santa Ana, CA 92701
Telephone: (714) 541-1010, Ext. 277
Facsimile: (714) 541-5157
cabasto@publiclawcenter.org

ASIAN LAW ALLIANCE
Beatrice Ann M. Pangilinan (Cal. Bar No. 271064)
184 Jackson Street, San Jose, CA 95112
Telephone: (408) 287-9710
Facsimile: (408) 287-0864
Email:  bpangilinan@asianlawalliance.org

*Additional counsel for plaintiffs Rodriguez and DeLeon:*

LAW OFFICES OF MANULKIN & BENNETT
Gary H. Manulkin (Cal. Bar No.  41469)
Reyna M. Tanner (Cal. Bar No.  197931)
10175 Slater Avenue, Suite 111
Fountain Valley, CA 92708
Telephone: 714-963-8951
Facsimile: 714-968-4948
gmanulkin@mgblaw.com
reynatanner@yahoo.com

*/ / /*

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

INDEX TO EXHIBITS

| No. | Description | Page |
|---|---|---|
| 62 | Declaration of Reyna Tanner, September 9, 2013 | 2 |
| 63 | Declaration of Holga Martinez, September 8, 2013 | 7 |
| 64 | Declaration of Alexander Bustos Garcia, September 8, 2013 | 10 |
| 65 | Declaration of Samuel Conlon, September 8, 2013 | 14 |
| 66 | Declaration of Peter A. Schey, September 9, 2013 | 18 |

Dated: September 9, 2013.

CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
Peter A. Schey
Carlos R. Holguín

PUBLIC LAW CENTER
A. Christian Abasto

ASIAN LAW ALLIANCE
Beatrice Ann M. Pangilinan

LAW OFFICES OF MANULKIN &
BENNETT
Gary H. Manulkin
Reyna M. Tanner

/s/ Carlos R. Holguín _____

*Attorneys for plaintiffs*

/ / /

Exhibits 62-66                    - 3 -                    Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

3

# Exhibit 62

<u>DECLARATION OF REYNA TANNER</u>

I, Reyna Tanner, declare and say as follows:

1. I am an attorney at law admitted to practice in the state of California. I am one of the attorneys for plaintiffs in *Aranas v. Napolitano*. I execute this declaration in support of plaintiffs' motions for preliminary injunction and summary judgment in *Aranas*.

2. My practice is limited exclusively to immigration law. I regularly advise and represent bi-national same-sex couples seeking to regularize the status of foreign-born spouses of U.S. citizens and lawful permanent residents. I am familiar with the answers to "frequently asked questions" regarding same-sex couples' eligibility for immigration benefits United States Citizenship and Immigration Services (CIS) posted on its website on or about July 26, 2013. Based on my many years of experience, I believe that very few same-sex couples previously denied immigration benefits will ever learn of the procedures set out CIS's FAQ for reopening their denied immigration petitions and applications and re-adjudicating them without regard to § 3 of the Defense of Marriage Act (DOMA).

3. First, though it is widely known that executive branch agencies are no longer enforcing DOMA § 3, I have not been contacted by any bi-national same-sex couple who had learned about CIS's July 26 FAQ or the procedures set out therein before consulting my office. In my experience, general public knowledge about the

demise of DOMA § 3 has not translated into specific knowledge among same-sex bi-national couples that they have any remedy for past discrimination in the adjudication of their petitions and applications for immigration benefits.

4. Even immigration practitioners are unlikely to be familiar with the CIS's post-*Windsor* DOMA FAQ. To locate this document one must go to the USCIS web site, then go to the News link, then proceed to a link dated July 1, 2013, addressing implementation of the *Windsor* decision. However, even then an individual only finds general information about CIS's willingness to reopen cases previously denied under DOMA, rather than any clear statement about how, and more importantly when, they may expect employment authorization.

5. In addition to plaintiff DeLeon, my office represents a number of same-sex couples denied immigration benefits pursuant to DOMA § 3 after February 23, 2011. According to CIS's FAQ, the agency is supposed to identify I-130 petitions denied after that date and advise the affected couple that their applications will be re-opened *sua sponte*. Among these clients is Lui Handi. CIS has yet to notify Mr. Lui *sua sponte* that his case will be re-opened, and has yet to issue him employment authorization, despite the United States Court of Appeals for the Ninth Circuit's having CIS's discriminatory denial of his immigration petition pursuant to DOMA § 3 pending before it. Instead, I have been required to affirmatively petition CIS and the Board of Immigration Appeals to re-open Mr. Lui's eligibility for immigration benefits. To date, I have received no response to my requests on behalf of Mr. Lui.

2

6. Another of my clients is class representative Jane DeLeon.  On August 4, 2013, acting on the advise of counsel and without having received any notice from CIS itself, Ms. DeLeon emailed CIS advising that on November 9, 2011, the agency had denied her Form I-290B motion to reconsider pursuant to DOMA § 3. She requested CIS re-open her motion, as well as her related I-601 waiver application, I-485 application for adjustment of status, and I-140 petition for immigrant worker. Under Title 8 of the C.F.R.'s, Ms. DeLeon was not entitled to work authorization while a motion to reopen or reconsider is pending.

7. On August 12, 2013, CIS notified Ms. DeLeon as follows: "Pursuant to a court order, the above case has been reopened or will be reconsidered. We will advise you separately if we need additional evidence and when we make a decision on this case." To date, CIS has still not decided Ms. DeLeon's application to adjust status, has yet to authorize her to work lawfully in the United States, and has failed to specify any date by which it will decide her applications or authorize her to work. Without employment authorization Ms. DeLeon is unable to work legally in the United States. Under 8 C.F.R. § 274a.2 a notice from CIS advising an applicant that his or her case has been reopened does not serve and never has served as authorization to be employed. *See also* 8 C.F.R. § 103.5(a).

I declare under penalty of perjury that the foregoing is true and correct and that if called to testify with respect thereto I could do so competently.

///

3

4

Executed this 9th day of September, 2013, at Fountain Valley, California.

Reyna Tanner
Attorney at Law

Exhibit 63

Declaration of Holga Martinez

I, Holga Martinez, depose and say:

1. I execute this declaration in support of plaintiff's motions for a preliminary injunction and proposed interveners' motion to intervene and for individual injunctive relief in *Aranas v. Napolitano*, No. SACV12-01137 CBM (AJWx).

2. As I state din my earlier filed declaration filed in this case, I am ready, willing, and able to join the *Aranas* case as a named plaintiff if that is necessary to protect my rights.

3. I am a citizen of Mexico and resident of Anaheim, California. I am lawfully married to a U.S. citizen, Martha Reyes. Martha has filed a family-based visa petition on my behalf which was denied by the USCIS on September 26, 2011, based solely on DOMA because "[b]oth you [my spouse Martha Reyes] and the [visa petition] beneficiary [me] are <u>women</u>." See Aranas, Dkt. # 89 Ex. 13 (emphasis in original).

4. On the same day, USCIS also denied my application for adjustment of status to become a lawful permanent resident solely because of DOMA. See Aranas, Dkt. # 89 Ex. 17. In this denial *USCIS also immediately terminated my temporary employment authorization and authorized presence*. *Id*.

5. As I explained in my previous declaration, prior to the Supreme Court's decision in *Windsor*, I attempted to renew my work permit without success.

6. After the Supreme Court issued its decision in the *Windsor* case, on the advice of counsel I contacted the CIS and requested that my case be reopened and that the denial of my employment authorization be vacated and employment authorized.

7. On August 28, 2013, CIS issued a "courtesy notice" stating that my application for permanent resident status had been approved, but that the agency reserved the right to verify the information submitted in my application to ensure conformity with applicable law, and that the "courtesy" notice "is not a visa nor may it be used in place of a visa."

8. The courtesy notice does not state that my employment is authorized nor has CIS to date issued me any documentation showing that I am authorized to be employed. The situation has placed and continues to place incredible strain, suffering, and hardship on our family, both economic and psychological.

7

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of September, 2013, at Anaheim in the State of California.



Olga Martinez

2

Exhibit 64

9

## Declaration of Alexander Bustos Garcia

I, Alexander Bustos Garcia, depose and say:

1. I execute this supplemental declaration in support of plaintiffs-intervenors' motions to intervene and plaintiff's motion for a preliminary injunction in *Aranas v. Napolitano*, No. SACV12-01137 CBM (AJWx).

2. I am a citizen of the Colombia. I was born in Bogota, Colombia, on August 26, 1978. I am lawfully married to Richard Fitch, a citizen by birth of the United States. We were married in Buenos Aires, Argentina, on September 25, 2012. We reside together in San Francisco, California.

3. Richard is employed part-time as an independent contractor working as a hairdresser. The pay he receives is extremely modest and because I am unable to be lawfully employed we face extreme hardship and difficulty meeting the daily needs of life. Among other things, we cannot afford medical insurance or medical care.

4. As explained in the Declaration of Richard Fitch executed June 11, 2013, we are unable to afford retained counsel to protect our legal interests in our dealings with the US Citizenship and Immigration Service (USCIS) regarding my eligibility for adjustment of status and employment authorization.

5. In May 2013, without legal representation, Richard submitted an I-130 Petition for Alien Relative to the USCIS on my behalf. A copy of the Petition was attached as Exhibit A and a copy of the receipt was attached as Exhibit B to the previously filed Declaration of Richard Fitch dated June 11, 2013.

7. In May 2013 I applied for adjustment of status and employment authorization. A copy of the Adjust of Status application was attached as Exhibit A and a copy of the receipt was attached as Exhibit B to my previous declaration. A copy of my application for employment authorization was attached as Exhibit C and a copy of the receipt was attached as Exhibit D to my prior declaration filed with the Court.

8. After the Supreme Court's decision in *Windsor* we were never contacted by the USCIS about reopening our case. Instead, we contacted the USCIS and were informed that our denied applications would be reopened. Richard was asked to and has submitted a copy of his most recent tax return.

9. Despite the fact that I applied for employment authorization long ago, *to date I have still not had my work authorization application reopened nor have I been granted employment authorization*.

10. The anxiety brought about by my unauthorized presence and inability to be lawfully employed has caused and continues to cause significant stress on our mental health and the overall stableness of our family relationship. As described in Richard's declaration executed June 11, 2013, we experience routine anxiety, apprehension and depression that could be substantially eliminated if the USCIS granted the same interim relief to us as it extends to heterosexual couples while their petitions and applications are being processed.

11. I am informed and believe that other immigrants in same-sex lawful marriages are identically situated to me. Namely, applications and/or petitions have been denied and while cases like ours may be reopened if the applicants affirmatively contact USCIS, employment authorizations have not been promptly issued to *Aranas* class members.

I declare under penalty of perjury that the foregoing is true and correct and that if called to testify with respect thereto I could do so competently.

Executed this 8th day of September, 2013, at San Francisco, California.


Alexander Bustos Garcia

/ / /

3

12

# Exhibit 65

## DECLARATION OF SAMUEL CONLON

I, Samuel Conlon, declare and say as follows:

1. I execute this declaration in support of plaintiff's motion for a preliminary injunction in *Aranas v. Napolitano*, No. SACV12-01137 CBM (AJWx).

2. I am a citizen of the United Kingdom. I am lawfully married to Gary Wanderlingh, a citizen of the United States. After a relationship lasting several years, we were married in Newtown, Connecticut on November 11, 2011. We reside together in Fairfield, Connecticut.

3. In October 2012, Gary and I retained attorney Kevin E. Dehghani in order to file a Petition for Alien Relative and application for Adjustment of Status with the United States Citizenship and Immigration Service ("USCIS"). On November 15, 2012, Mr. Dehghani filed an I-130 Petition for Alien Relative, an I-485 Application for Adjustment of Status and an I-765 Application for Employment Authorization ("First Application Package") with the USCIS.

4. In early December 2012 the USCIS summarily denied all applications filed with the First Application Package based solely on the Defense of Marriage Act ("DOMA"). Gary and I were never interviewed by the USCIS to evaluate the bona fides of our marriage. Nor was I offered any interim status or temporary employment authorization pending a resolution of DOMA's constitutionality. Instead, I was denied any interim status or employment authorization.

5. In January 10, 2013, our attorney filed a second set of applications with the USCIS, including an I-130 Petition for Alien Relative, I-485 Application for Adjustment of Status and I-765 Application for Employment Authorization ("Second Application Package"). On January 23, 2013, without providing an opportunity for an interview, the USCIS issued summary denials of the January 10, 2013, petition and applications, citing DOMA as the sole reason for not recognizing our marriage as valid under immigration laws. Once again we were not provided an interview to examine the bona fides of our marriage or my need to have temporary employment authorization. The denial of my I-485 application clearly states that my application for temporary employment authorization was "also denied." The denial informed me that "there is no appeal to this decision."

6. While our January petition and applications were pending, our attorney also submitted on my behalf a 14-page application for Deferred Action status so that my presence is temporarily authorized and I may be issued temporary employment authorization. On March 27, 2013, USCIS wrote to me and denied the Deferred Action application. No real reasons were provided other than that in the exercise of its discretion, USCIS had decided "we are not able to extend deferred action to you …" I was told that "this determination may not be appealed."

7. I am informed and believe that since the Supreme Court issued its decision in the *Windsor* case holding DOMA unconstitutional, my attorney has been able to get my case reopened. Specifically, our case was re-opened on August 1, 2013.

2

However, *to date I have still not been issued employment authorization and I have no idea when, if ever, the CIS will grant my long-pending application for work authorization.*

8. Denied the temporary ability to legally work makes our lives and family relationship untenably stressful and precarious. The stress of unemployment has led and continues to lead to declines in my and my family's stability and well-being.

I declare under penalty of perjury that the foregoing is true and correct and that if called to testify with respect thereto I could do so competently.

Executed this 8th day of September, 2013, at Fairfield, Connecticut.


_S. J. Conlon_   8 SEP 13
Samuel Conlon

///

Exhibit 66

DECLARATION OF PETER A. SCHEY

I, Peter A. Schey, declare and say as follows:

1. I am an attorney at law admitted to practice in the state of California. I am one of the attorneys for the plaintiff class in *Aranas v. Napolitano*. I execute this declaration in support of plaintiffs' motions for preliminary injunction and summary judgment in *Aranas*.

2. In the course of representing the certified plaintiff class, I regularly consult with attorneys who advise or represent bi-national same-sex couples seeking to regularize the immigration status of foreign-born spouses of U.S. citizens and lawful permanent residents. As class counsel in *Aranas*, I am also familiar with the answers to "frequently asked questions" regarding same-sex couples' eligibility for immigration benefits United States Citizenship and Immigration Services (CIS) posted on its website on or about July 26, 2013. Over years of practice I have also represented numerous bi-national couples seeking marriage-based immigration benefits.

3. Unless Form I-130 petitions to classify spouses as an immediate relatives (filed by US citizens and lawful permanent residents) and Form I-485 applications of adjustment of status (filed by the immigrant beneficiary) disclose clear statutory ineligibility, its CIS's policy and practice to issue immediate employment authorization (EADs)—usually within about 30 days—to immigrant beneficiaries. Such EADs are typically valid for a year and are routinely extended until CIS

finishes adjudicating the Forms I-130 and I-485. If CIS approves the Forms I-130 and I-485, the immigrant beneficiary remains authorized to work in the United States permanently. If CIS denies the Form I-130 or I-485, then the immigrant is no longer permitted to work lawfully. I am informed and believe that CIS is not issuing employment authorization to class members even in accordance with this policy and practice followed when new petitions and applications are filed.

4. I presently have been told of only *one* class member denied immigration benefits pursuant to § 3 of the Defense of Marriage Act (DOMA) who has received an employment authorization document (EAD) as a result of CIS's efforts to implement the Supreme Court's decision in *United States v. Windsor*. In all other cases of which I am aware, including those of plaintiff Jane DeLeon and proposed intervening plaintiffs Alexander Bustos Garcia and Holga Martinez, CIS has yet to provide class members with proof that they may work lawfully in the United States.

5. I am also familiar with defendants' supplemental status report of August 19, 2013 (Dkt. 160), wherein defendants represent that CIS has managed to identify only 148 "matters" involving denials of petitions and application for immigration benefits pursuant to DOMA § 3. *Id*. at 2. CIS admits that a single class member could account for up to four of these "matters," but provides no information on how many class members it has actually identified. *Id*. at n. 1. Even were each "matter" uniquely related to a different class member, I believe this number *grossly undercounts the*

2

*actual number of class members entitled to a remedy for CIS's having applied*

*DOMA § 3 to unlawfully deny them immigration benefits.*

6. First, statistical evidence strongly indicates that more than 500 same-sex couples likely apply for immigration benefits annually. *See* Reply to Opposition to Motion for Class Certification (Dkt. 87) at 9 n.8 (collecting evidence). Even though CIS has said it will identify only class members denied immigration benefits after February 23, 2011, it should still have identified around 1,000 to 1,500 class members, or some 10 times the number of "matters" the agency reports identifying.

7. Second, CIS admits that it has been advised by email of 60 "matters," all of which are included in its total of 148, 23 of which the agency had failed to identify through its voluntary effort to identify and re-open DOMA-related denials. Dkt. 160 at 3. CIS's own numbers accordingly indicate that whatever plan defendants have implemented, the agency has failed to identify a very large number of class members.

8. Third, what CIS has actually done to identify class members is wholly unknown to the Court or class counsel. During a court-ordered meet-and-confer (Dkt. 142), plaintiffs requested defendants disclose some information regarding CIS's efforts to identify class members: specifically, that defendants provide a statement regarding how CIS identified class members and a list of the names, last known addresses, telephone numbers, and email addresses of such class members and their legal counsel, if any. Defendants refused that request, and there is

3

accordingly no way of knowing whether CIS has spent minutes, hours, or days attempting to identify class members. Nor do we know whether their effort was an effective one or wholly spurious and utterly ineffective.

9. Based on my experience, I believe it is also likely that very few class members are or will become independently aware that they are entitled to any remedy for the unconstitutional denial of their immigration applications and petitions pursuant to DOMA § 3. Many class members are low-income and do not have the assistance of counsel (including for example proposed interveners Richard Fitch and Alexander Bustos Garcia). Many immigrant beneficiaries have limited English comprehension and wouldn't understand the DOMA FAQ even if they could find. Locating CIS's DOMA FAQ requires class members to go to CIS's web site, then go to a "News" link, then to a link dated July 1, 2013, addressing implementation of the *Windsor* decision. I have yet to be consulted by any class member who had become aware of CIS's FAQ independently of my advising him or her of its existence.

10. Without interim relief in the nature of court-ordered employment authorization, I believe that hundreds or thousands of class members will go for many months or some for years without the ability to work legally. Low-income US workers (unfairly passed over for jobs by employers preferring undocumented workers), bi-national families with class members, and the immigrant class members will share in the well-known harmful and irreparable consequences of forcing people not to work or to work illegally.

I declare under penalty of perjury that the foregoing is true and correct and that if called to testify with respect thereto I could do so competently.

Executed this 9th day of September, 2013, at Los Angeles, California.

_____

Peter A. Schey, Esq.

/ / /

CERTIFICATE OF SERVICE

SACV12-01137 CBM (AJWx)

I hereby certify that on this day I electronically filed the foregoing PLAINTIFFS

EXHIBITS 62-66 with the Clerk of Court by using the CM/ECF system, which

provided an electronic notice and electronic link of the same to all attorneys of

record through the Court's CM/ECF system.

Dated: July 8, 2013                                    /s/ ___Carlos Holguín_____

/ / /

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

18